[Civ. No. 14197. First Dist., Div One. May 22, 1950.]

GERTRUDE A. GERSICK, Appellant, v. RICHARD D. SHILLING, Respondent.

Willens & Boscoe for Appellant.

Weinmann, Rode, Burnhill & Moffitt and Cyril Viadro for Respondent.

PETERS, P. J.—In a personal injury action, the jury brought in a verdict for plaintiff in the sum of $1,500. Plaintiff moved for a new trial on the ground that the damages awarded were inadequate. The motion was denied, and plaintiff appeals on the sole ground that the damages awarded are inadequate as a matter of law.

There is ample, although conflicting, evidence to sustain the implied findings of the jury that defendant's negligence proximately caused the accident and resultant injuries, and that plaintiff was not contributively negligent. Since defendant did not move for a new trial, nor has he appealed, it is not necessary to review in detail the evidence on the issue of liability. Suffice it to say that the evidence shows that plaintiff, while crossing the street in a marked crosswalk, at about 7:15 a. m., April 29, 1947, was hit by an automobile being driven by defendant and going at less than 15 miles per hour. The evidence, although conflicting on all issues, supports the implied findings that plaintiff had the right of way; that defendant negligently violated her rights; that such negligence was the proximate cause of the accident, and that plaintiff was not contributively negligent.

Plaintiff was dazed by the accident, but did not lose consciousness. She suffered lacerations on her head and thigh, and an injured leg. She was taken to the emergency hospital, where she received emergency treatment. Her sister, a nurse, called for her about two hours after the accident, and plaintiff was taken to her sister's home. Later that day her sister accompanied her to the office of Dr. Walker, plaintiff's family doctor. Plaintiff walked into the office, and the doctor changed the dressings on her head and thigh, and strapped her knee, which was badly swollen. Because of the swollen condition of the knee, Dr. Walker advised plaintiff not to walk on that leg, advised bed rest, and had plaintiff taken to her sister's automobile in a wheel chair. Plaintiff remained in bed at her sister's home for two days, and then returned to her own home, where she remained in bed for six more days. Then she was taken to the hospital, at Dr. Walker's suggestion, where she remained for 19 days. At the hospital, an orthopedic specialist was called in, and X rays

were taken. It was then discovered that plaintiff had two small fractures of her left leg. The leg was placed in a cast from her ankle to her groin, and the cast was kept on for about five weeks. She used crutches for some time thereafter and later bound her leg with an Ace Bandage.

The trial was had in June of 1948. Testimony as to damages, and that is all that we are interested in on this appeal, was given by Dr. Barnard, Dr. Walker and by plaintiff. No medical witnesses were presented by defendant. Dr. Barnard, an orthopedic specialist, testified that he first examined plaintiff on May 9, 1947, when he was called in by Dr. Walker; that he then found lacerations of the scalp and thigh, which had almost fully healed; that he ascertained that the left knee was swollen and had some loose ligaments; that plaintiff complained of dizziness and back pains; that X rays disclosed no back fracture, but they did disclose two small fractures of the lower left leg; that he recommended the cast; that his diagnosis disclosed that two major ligaments of the knee were torn; that the ligaments act as a secondary protection to the knee, while the knee muscles are the primary protection; that both keep the joint in place; that because of the torn ligaments this knee, at least when subjected to strain, is unstable; that the fractures, in the opinion of the doctor, plus the instability of the ligaments, will lead to some degenerative change in that the left knee joint will wear faster than the other; that plaintiff can walk all right on the level, but when any strain is imposed on the leg, such as in walking up and down stairs, or on an uneven surface, plaintiff must consciously tense the muscles of the left leg or it will give way; that such instability will be permanent; that the knee is a "useful" one and will carry her through most normal pursuits; that the muscles of the knee are in good condition; that "fairly certainly" plaintiff will have arthritic change in her left knee joint; that she can no longer play tennis or ski or engage in other active sports of that nature; that he recommended that the patient swim to strengthen the leg muscles; that when he examined her about a year after the accident the dizziness and nervousness had cleared up; that he had been paid $100 for his services and anticipated no further treatments by him for plaintiff.

Dr. Walker testified as to the condition he found on April 29, 1947, the date of the accident, and of recommending bed rest; that on May 7, 1947, he caused her to be sent to the

hospital and two days later called in Dr. Barnard; that after the cast was removed she was on crutches for eight weeks; that for some time after the accident she was nervous, but that he anticipated this would clear up; that he advised plaintiff she could return to work in January of 1948; that he thought he should see the plaintiff every month or two for another six months to check on her nervousness; that he had not yet been paid for his services, and had not given the subject of fee any thought, but believed $250 would be reasonable for his past services and that about $25 would cover future services. He admitted that for three or four months prior to the accident plaintiff was under his care for an infection.

Plaintiff testified that at the time of trial she still had "a slight nervousness," and that, while she had no trouble walking on the level, her knee was still unstable when going up or down stairs or when she moved quickly; that before the accident she had been quite athletic but could not now engage in the more vigorous sports; that about three months after the accident, on the doctor's advice, she had started to go swimming and had kept this up; that starting in November, 1947, she had gone dancing with her husband and had repeated this several times since; that after the accident she started to perform some of her housework in August of 1947, but was unable to perform all her duties until December; that for two years prior to the accident she had worked for Hunt, Hatch and Company as head bookkeeper at a gross salary of $55 per week, with take-home pay of $44.70 per week; that this company filled her job after the accident and would not re-hire her; that in January, 1948, she obtained a similar job with another employer, but after four days had to quit because of her nervous condition; that up to the time of trial she had been unable to secure a comparable position. In response to a question from her own counsel as to why she was unable to secure another job, she testified: "Well yes, in the past several years since I had married, I hadn't worked, and the position I had had, the first one I had held, and during the war time I could get a job without too much previous experience, and now the employers are asking for more experience, and to get a job like the other one would be more difficult, and the fact that I am getting past 35." She implied that she might have secured a job at a lesser salary. She testified that the hospital bill was $268; that an X ray cost her $7.50; and that she had spent $35 for medicines. At least $30 of this last sum was spent for vitamin pills, and it is not

clear whether these were made necessary as a result of the infection or as a result of the accident. Plaintiff also claimed in her complaint, $400 for doctor bills, $3,025 for loss of wages and $50,000 general damages.

On this evidence the jury brought in a verdict of $1,500. Plaintiff, on this appeal, contends that the damages are inadequate as a matter of law.

The principles applicable to such an appeal are well settled. The question as to the amount of damages is a question of fact. In the first instance, it is for the jury to fix the amount of damages, and secondly, for the trial judge, on a motion for a new trial, to pass on the question of adequacy. Whether the contention is that the damages fixed by the jury are too high or too low, the determination of that question rests largely in the discretion of the trial judge. The appellate court has not seen or heard the witnesses, and has no power to pass upon their credibility. Normally, the appellate court has no power to interfere except when the facts before it suggest passion, prejudice or corruption upon the part of the jury, or where the uncontradicted evidence demonstrates that the award is insufficient as a matter of law. In determining whether there has been an abuse of discretion, the facts on the issue of damage most favorable to the respondent must be considered. (See *Bencich* v. *Market St. Ry. Co.*, 20 Cal. App.2d 518 [67 P.2d 398] ; *Sassano* v. *Roullard*, 27 Cal.App. 2d 372 [81 P.2d 213] ; and the many cases cited therein.)

Plaintiff, while recognizing the existence of these rules, contends that the facts here demonstrate, as a matter of law, that the damages are inadequate, and, in this connection, places her primary reliance on the rules announced in the Bencich case, *supra*. In that case, on the first trial, a verdict of $20,000 was rendered, but the trial court granted a new trial. On the second trial the jury brought in a verdict of $5,000. Plaintiff's motion for a new trial on the ground of inadequacy was denied, and plaintiff appealed. This court reversed the judgment on the ground that the award of $5,000 was inadequate as a matter of law. After the reversal, the cause was retried, and resulted in a judgment for $20,000, which was affirmed. (29 Cal.App.2d 641 [85 P.2d 556].)

In the opinion in 20 Cal.App.2d 518, this court, after first stating that a motion for a new trial on the ground of inadequacy "appeals peculiarly to the discretion of the trial court, and its order refusing a new trial will not be disturbed on

appeal in the absence of a showing of abuse of discretion'' (p. 520) set forth the following facts as demonstrating such abuse (p. 521):

''Appellant received in the accident, in addition to a fractured left humerus and bruises from which he has fully recovered, a badly crushed right foot. He spent approximately six months in the hospital, where traction was placed on the arm, pins were inserted into the toes and traction also applied on the foot and leg. The outer and forepart of the foot eventually became gangrenous and had to be amputated (including all toes except the big toe), and five skin grafts done. The outer and anterior third portion of the foot has been amputated so. that at present it extends back about one-half of the fifth metatarsal to the neck of the fourth and third slightly upon the neck of the fourth. The fifth is intact, as is the big toe. The principal weight bearing surface of the foot is missing, or where the normal foot has a triangle for weight bearing, appellant's foot has but two points for this purpose, namely, the base of the big toe and the heel. To remedy this defect appellant is and will be required to wear a specially prepared brace in his shoe. Appellant was 36 years of age and his occupation was that of a fireman . . . His monthly salary was $200 . . . Under the regulations of the civil service . . . appellant's status as a fireman was fixed for a remainder of 12 years, at which time he had an optional right to retire. This period, of course, was less than his life expectancy of 30 years. By reason of the injuries received in this accident, appellant was retired upon a life pension of $100 per month. His special damages for nursing, X rays, laboratory, physicians' services, etc., were $2,423.37. Thus, the allowance made by the jury for pain and suffering and permanent disability was $2,576.63. This is not considering anything for loss of compensation which amounted to $3,-441.72. . . .

''. . . it is patent that at the very most the amount awarded by the jury, barely, if at all, repays appellant his special damages. . . .

''. . . It is obvious . . . that the award to appellant is out of all proportion to the expenses necessarily incurred by him as a result of the injury and the damages he has sustained through pain and suffering, and permanent injury and disability.''

Thus the court demonstrated, mathematically, that the damages were inadequate as a matter of law, and properly re-

versed the judgment. The cases in which this can and has been done are relatively few in number. One other such case is *Weiskopf* v. *Smith*, 44 Cal.App.2d 438 [112 P.2d 665]. There, a minor and his parents received a judgment for $100, and plaintiff appealed. The evidence demonstrated that the minor had received a badly and permanently scarred face as a result of the accident, and other serious but not permanent injuries. Doctor bills already incurred amounted to $100, and at least $200 more would have to be incurred, plus the cost of hospitalization. The automobile damage amounted to $60. Solely on the basis of the Bencich case, the judgment was reversed.

As opposed to these two cases, there are many cases where the appellate courts have refused to interfere on the ground of inadequacy. Illustrative of these is *Sassano* v. *Roullard*, 27 Cal.App.2d 372 [81 P.2d 213]. There, a jury awarded a 7-year-old plaintiff but $250 for a badly cut and permanently scarred face. There were no special damages incurred by the child. After the verdict was brought in, the trial judge criticized the jury, stating, among other things, that (p. 375) "if he is entitled to anything he is entitled to more than $250. . . . I know that it [the verdict] isn't adequate at all if he is entitled to anything. . . . I know this, if he is entitled to anything he is entitled to 10 times that sum, easily. Yes, easily so." In spite of this view expressed by the trial judge when the verdict was rendered, a short time later he denied plaintiff's motion for a new trial on the ground of inadequacy. This was affirmed on appeal, the court stating (p. 373):

"In considering this question we must bear in mind the firmly established rules that the jury is the judge of the weight and sufficiency of the evidence and the credibility of the witnesses; that the question of the award of damages and their amount is primarily one for the jury; that on a motion for new trial the trial judge sits as a thirteenth juror; that it becomes his duty to again weigh the evidence and its sufficiency and measure the credibility of the witnesses; that in so doing it is also his duty to consider the adequacy or inadequacy of the amount of damages awarded; that if he finds the damages either excessive or inadequate it is his duty to grant a new trial either generally or upon the special issue of the amount of damages or himself reduce excessive damages.

"Doing justice between litigants is the prime object of the law. It is in the trial court that this object should be sought

and can be obtained by a trial judge who will fearlessly perform the duties of his office and who will exercise a reasonable and lawful control over verdicts. This is a responsibility that cannot be shifted to an appellate court. It rests on the shoulders of the trial judge and no other for the power of appellate courts to control the amount of damages awarded comes into play only when the facts before it are such as to suggest passion, prejudice or corruption on the part of the jury.''

In *Caulfield* v. *Market Street Ry. Co.*, 20 Cal.App.2d 220 [66 P.2d 752], a plaintiff received judgment for $400, moved for a new trial on the ground of inadequacy, and, upon the denial of the motion, appealed. There, as here, it was contended that the special damages proved, exceeded the award. This court affirmed, stating (p. 221):

''There was a conflict in the testimony as to the nature and extent of her injuries; and from that adduced by the defendant the jury was justified in finding that they were not serious or permanent.

''It was testified that she lost time from her employment and incurred liability for hospital care and the services of physicians and nurses, the aggregate of the amounts claimed exceeding the judgment. While amounts agreed to be paid for services are some evidence of their reasonable value [citing cases], this is not conclusive [citing a case], and the same rule applies as to expert opinion as to value. [Citing authorities.] Nor was the jury compelled to conclude from plaintiff's testimony as to the time lost from her employment that this was the necessary result of her injuries. [Citing an authority.]

''In view of all the testimony we cannot say that the award was inadequate.'' (See, also, *Johnson* v. *McRee*, 66 Cal.App. 2d 524 [152 P.2d 526], and *Foshee* v. *Wolters*, 86 Cal.App.2d 766 [195 P.2d 930].)

Now how do these rules apply to the present case? Plaintiff testified that her hospital bill was $268; that she had spent $7.50 for an X ray, and $35 for medicines. She had paid $100 to Dr. Barnard, and owed, for past and future services, $275 to Dr. Walker. This is a total of $685.50 for such special damages. Even as to these items the jury was not bound to find that they were fully recoverable. The jury was not bound by the doctors' evaluation of and the necessity for their services. The jury might have inferred that some of the visits of Dr. Walker were occasioned by the infection for which plaintiff was under treatment at the time of the

accident, and were not required by the accident. From the facts that the jury saw this witness for the several days of the trial, saw her walk to and from the witness chair, and around the court, and from the evidence that she went swimming in August and dancing in November, the jury might well have concluded that no future treatments were necessary. As already pointed out, the jury might well have inferred that a major portion of the $30 spent for vitamin pills out of the $35 spent for medicine, was not occasioned by the accident. Thus, even as to the items of special damage, the evidence and reasonable inferences therefrom are sufficiently conflicting so as not to require a finding that the special damages amounted to $685.50.

Plaintiff claims loss of wages in the sum of $3,025, or $55 a week for 55 weeks. This claim for loss of earnings, no matter how pleaded, is an item of general damage. (*Tornell* v. *Munson*, 80 Cal.App.2d 123, 125 [181 P.2d 112].) Thus, the judgment of $1,500 includes at least $814.50 for general damages, and more if the jury determined, as it could, that the special damages were less than the $685.50. Moreover, the jury was not bound by plaintiff's testimony that it was not until January, 1948, that she was able to work, and by the doctor's testimony that he first permitted her to seek work in January, 1948. From the testimony that plaintiff went swimming in August and dancing in November, and from observing plaintiff's condition in court in June of 1948, the jury might well have believed plaintiff could, had she wished, sought work before January of 1948. From plaintiff's own testimony, quoted earlier in this opinion, the jury also might have believed that plaintiff's inability to get work was caused by her lack of experience and her age rather than by any impairment of her earning capacity caused by the accident.

As to the extent of the injuries claimed, the jury was not bound by the doctors' testimony or by that of plaintiff. The jury not only saw the plaintiff and observed her actions, but saw the X rays taken nine days after the accident, and others about a year later. They might well have found that the injuries were not as severe or as permanent as claimed. Under these circumstances, and under the rules above stated, although the award is undoubtedly small, this court cannot say that it is inadequate as a matter of law.

There is one other problem that should be discussed. On cross-examination defendant's counsel, over objection, was permitted to elicit from plaintiff the information that most of

her hospital bills had been paid by the Blue Cross, with whom she had a policy, and that she had drawn $460 from the United States Employment Service for disability. It was error to have admitted this testimony. Total or partial compensation received by an injured party from a collateral source, wholly independent of the wrongdoer, does not operate to reduce the damages recoverable from the wrongdoer. (*Anheuser-Busch, Inc.* v. *Starley,* 28 Cal.2d 347, 349 [170 P.2d 448, 166 A.L.R. 198]; *Peri* v. *Los Angeles Junction Ry. Co.,* 22 Cal.2d 111, 131 [137 P.2d 441]; see, also, 15 Am.Jur. p. 615, § 198; 18 A.L.R. 678; 95 A.L.R. 575.) But, although the trial judge erroneously admitted this evidence, he changed his mind before the cause was submitted to the jury, because he fully, fairly and properly instructed that if the jury found defendant was liable, plaintiff was entitled to recover for all expenses incurred, and that the amount of damages should not be reduced "by the receipt of payment by her for her loss from a source wholly independent of said alleged wrongdoer" and that "Where the person suffering the damage has procured insurance protecting her against the loss to which the alleged wrongdoer did not contribute in procuring, and her insurer pays her for the loss suffered, said payments by her insurer are not deductible." These instructions cured the error in the erroneous admission of the testimony, inasmuch as this court must presume that the jury followed the instructions.

The judgment appealed from is affirmed.

Bray, J., and Schottky, J. pro tem., concurred.