[Civ. No. 21466.   Second Dist., Div. One.   June 11, 1956.]

RUTH A. FRAMPTON, Appellant, v. PHILIP A.
STOLOFF, Respondent.

176

Jack Carl Greenberg and Phill Silver for Appellant.

Wyman & Finell and Eugene L. Wymann for Respondent.

WHITE, P. J.—Plaintiff was a guest in an automobile which was standing still when defendant's automobile struck it in the rear and pushed it forward from 8 to 10 feet, causing considerable damage to the front of defendant's car and slight damage to the rear of the one in which plaintiff was sitting. Plaintiff sought to recover by this action $35,000 damages for injuries to her person.

At the time of the trial, plaintiff was in a mental hospital. Her sister and guardian ad litem appeared for her. Defendant admitted liability and trial was limited to the amount of damages, if any, suffered by plaintiff as the result of said collision. The jury's verdict was $250. Plaintiff moved for a new trial on the ground that the damages awarded her were inadequate. The motion was heard and denied. Plaintiff appeals.

In the instant action, there is evidence which would support a larger award of damages. Since the jury presumably did not believe that portion of the evidence, it need not be considered in detail here. ▆ An appellate court is authorized to disturb a judgment on the ground of inadequacy of damages only where the amount of the award is supported by no substantial evidence in the record and the verdict is a clear abuse of the jury's discretion. (*Gersick* v. *Shilling*, 97 Cal. App.2d 641, 645 [218 P.2d 583]; *Phillips* v. *Lyon*, 109 Cal. App. 264, 270 [292 P. 711].)

Appellant urges that, since the award to appellant is less than her medical expenses, it was inadequate as a matter of law. The undisputed evidence is that plaintiff was taken shortly after the collision on September 22, 1953, to the Valley Receiving Hospital, was there told to go to a private physician; that she then saw and was examined and treated by Dr. Herman Seal on the same day; that he took X-rays for her that day; that the X-rays were negative; that she returned to see Dr. Seal two days later and was then hospitalized for treatment from September 24 to October 9, 1953; that the bill for hospital care given her was $347; that Dr. Seal's bill for services during, before and after hospitalization was $227; and that Dr. Luck's services as orthopedic consultant were worth $115. In this connection, appellant cites and relies upon the three decisions next discussed.

The judgment in *Torr* v. *United Railroads*, 187 Cal. 505 [202 P. 671], was reversed on appeal for the reason that the trial court found that plaintiff "then was, and prior thereto had been earning as said school teacher, a salary in the sum of $120 a month; that plaintiff did not lose any amount whatever, by reason of said injuries, which she would have earned . . . ". In that case, the evidence was without conflict that because of plaintiff's injuries she had been unable to work at her profession for long periods of time, and had lost salary far in excess of the amount of damages awarded. The facts and circumstances of that case and the instant action differ substantially. In the instant action, there is no evidence that plaintiff had ever worked steadily, and to the contrary it appears from the record that during the year preceding the accident she had suffered a back injury when she fell in a department store where she was working in Pittsburg, and had drawn three to four months compensation therefor; that "she did work off and on" before the accident; that she had worked a couple or three weeks as a housekeeper at her last place of employment; that a day or two before the accident she "had no place to go" and was "staying" at the home of the driver of the automobile in which she was sitting when injured; that she told Dr. Goren "she was a model and a showgirl" and "some kind of housekeeper"; and that she had worked between two and three months on the housekeeping job before the last. ■ A careful reading of the entire record discloses not one iota of evidence as to what, if any, compensation plaintiff had earned in the past or could have been expected to earn in the future.

*Price* v. *McComish*, 22 Cal.App.2d 92 [70 P.2d 978], involved a fractured hip ball at the socket which required plaintiff's hospitalization for two weeks, his remaining in bed in a plaster cast at home for three months with no ability to move except by the contrivance of ropes and pulleys over his bed, the wearing of a steel brace for two months, walking only on crutches for several months, and the use of a cane thereafter. Defendant was held liable for plaintiff's injury and judgment was given for only $200. Without conflict the evidence was that prior to the accident plaintiff "was able-bodied, and worked with his men on his jobs"; that since the accident he was unable to carry on his business; and that his actual medical expenses amounted to more than three times the amount of the judgment. In reversing the judgment, it is said, at page 95, "It is well settled that where it clearly appears from the evidence that a judgment is wholly inadequate in amount, a refusal by the trial court to grant a new trial for that reason furnishes ample ground for a reversal of the judgment."

The facts in the instant action, however, are clearly distinguishable from those in *Price* v. *McComish, supra*. In the instant action, plaintiff's medical expenses exceeded the amount of the judgment. However, such expenses were incurred between September 22, 1953, the date of the collision, and May 4, 1954; all X-rays taken were negative; the doctor who was attending her found a swelling the size of a lemon on her lower back on the date of the accident; he treated her with rest, diathermy and drugs; he never really found any muscle spasm and the swelling disappeared in about a week; he continued hospitalization for about 10 days more and treatments thereafter for about two months. Plaintiff later went to Dr. Luck who treated her for several months, and, on cross-examination, testified that when he last saw her, her complaints as to her back were about the same as when he first saw her and he "didn't accomplish very much." The record in the instant action also contains the testimony of Dr. Goren, called by respondent, that he examined plaintiff October 13, 1953, about three weeks after the accident, found no indication of any recent back injury, and that he believed her complaints were caused by the recurrence of the mental trouble for which she had been committed and treated with shock therapy some 12 years before the accident and which had caused her to be again committed six weeks before the trial; and that, in his opinion, any hospital-

ization or treatments to plaintiff's back after the swelling had disappeared were not required because of the collision but were given because of complaints occasioned by her pre-existing mental illness. The jury had the right to accept as true the diagnosis and explanation given by Dr. Goren, and apparently they did so. Accepting this view of the evidence, they could have awarded one-third of the hospital bill, or $115, and one-eighth of Dr. Seal's bill, or $30, and none of Dr. Luck's bill, since his services began 2½ months after the collision and, according to substantial evidence, were not required by reason of any condition attributable to the accident in question. If the jury accepted Dr. Goren's testimony as true and his opinions as correct, their award covers the entire medical expense which proximately resulted from the collision and over $100 for general damage.

*Price* v. *McComish, supra,* is not authority for reversal of the judgment in the instant action.

In *Phillips* v. *Lyon,* 109 Cal.App. 264 [292 P. 711], an award of $3,000 for personal injuries suffered by a 15-year-old boy, including the breaking of both bones of his right forearm near the wrist, the fracture of the 12th vertebra which had caused a lateral curvature of the spine and injury to the periphery process of the vertebra, and a severe contusion on the back of his head, was affirmed. The court, at page 270, said:

". . . From the very necessity and uncertainties of the situation a jury is accorded a wide latitude and an elastic discretion in assessing damages as compensation for personal injuries. We know of no equitable or accurate means of measuring the damages under such circumstances except to rely upon the sound judgment of the jurors. Under the facts of this case we are unable to say as a matter of law that the judgment is inadequate or that the award is so grossly insufficient as to lack support of the evidence and require a reversal on that account."

In appellant's opening brief, she contends that "defense counsel was guilty of prejudicial misconduct . . . by injecting into the case the following evidence:

"(a) That plaintiff had married a 'convicted felon';

"(b) That plaintiff was suffering from schizophrenia after the court had sustained an objection to the introduction into evidence of the Hospital records to prove this fact;

"(c) That plaintiff had a past mental record at the age of 18;

"(d) That plaintiff had an old spine injury."

A portion of the record of the cross-examination of Dr. Luck, a witness called by plaintiff, is relied upon to substantiate instance "(a)" above. It reads as follows:

"Q. Did she inform you that at that particular time when you were examining her that she was also under extreme emotional upset because she had in process a suit for annulment against a Frank Wade, whom she married and whom she found out was a convicted felon, and who also was already married; did she tell you that? A. No. We don't take a very detailed——

"Mr. Silver: If your Honor please, I object to that question on the ground that it is improper for counsel to stigmatize somebody else in the form of a question which assumes that the facts which he stated are true.

"The Court: The objection is overruled.

"Q. By Mr. Wyman: Doctor, will you please answer the question? A. I have no knowledge of that suit, or probably a good many of the details of her social history. We don't take a complete psychiatric history in orthopedics. We relate more of our history to the muscular skeletal system.

"Q. There is no question, though, Doctor, in your own mind as a medical doctor, assuming those facts to be true, that she was in the process of getting an annulment and had a bigamous marriage and filed a criminal complaint, that these things would tend to upset her and make her very nervous, and cause tension; is that not so? A. They upset some people."

The only other objection by plaintiff that in any way bears upon this alleged ground of reversal was made during the examination of Dr. Goren, a witness called by defendant, and is as follows:

"Q. And the three marriages to the bigamists would be bound to affect one emotionally?

"Mr. Silver: I object to it as leading and suggestive.

"Mr. Wyman: I withdraw it.

"Q. Would her past married life have any effect on her emotionally? A. Yes."

Plaintiff's sister, a witness called by plaintiff, had previously testified on direct examination that plaintiff had been in Agnew State Hospital for approximately six weeks; and, on cross-examination without objection from plaintiff, that she was "acquainted with the fact that" at the time of the accident her sister "was undergoing certain emotional disturb-

ances with an annulment from Mr. Frank Wade" and she "knew" her sister had "entered into a bigamous marriage as far as Mr. Wade was concerned" and she "was in process of prosecuting Mr. Frank Wade at that time for bigamy" and "this was all making her very emotionally upset." The record contains other similar testimony to which no objection was made. Consequently, the testimony objected to and now cited as prejudicial error is merely cumulative and its admission could not have been prejudicial.

As to instances (b) and (c) of alleged prejudicial misconduct, we are cited to no objection to evidence that plaintiff was suffering from schizophrenia. On the contrary, the record discloses that the following occurred when defendant offered in evidence "the copies of the hospital records of Agnew State Hospital and the petition committing the lady to the asylum":

"MR. SILVER: I will have to talk to the Court about this first.

"MR. WYMAN: I will withhold it."

Numerous questions relating to plaintiff's mental condition, her history of prevous commitment, the symptoms of schizophrenia, plaintiff's complaints and acts and statements to the several doctors who examined her, were asked and answered without objection.

Regarding instance (d), while several witnesses testified regarding plaintiff's previous spine injury, the record contains not one objection to any question concerning it.

In fact the entire record contains only four objections by plaintiff, only one of which was overruled. The one overruled was the objection "on the ground that it is improper for counsel to stigmatize somebody else" hereinbefore quoted.

Further examination of the record discloses not one motion to strike, no request that the jury be instructed to disregard any of the evidence or any statement of counsel, and no claim made during the trial that counsel for defendant was guilty of any misconduct of any kind.

A judgment will not be reversed on such objections or claims raised for the first time on appeal.

Appellant contends that the trial court committed an abuse of discretion in restricting the plaintiff's cross-examination of Dr. Goren, a witness for defendant. Dr. Goren testified that plaintiff's complaints were schizophrenic; that the emotional condition found when he examined her could not be attributed to "the pain that she was undergoing from the

injury she complained of''; that ''She had a history of pre-existing mental disease and she was suffering from the same condition. She has never recovered from that''; that the history of preexisting mental condition was 12 years old ''But she had been behaving as a mentally deteriorated person after that''; that ''Any woman who marries three married men has some mental deterioration which is not normal''; that she didn't tell him ''she knew these men were married when she married them''; that ''she found out later they were married'' and ''in each case she took the steps to annul the marriage''; that he ''certainly would expect a woman who has been married before to inquire''; that he doesn't ''know if she inquired or not.''

As stated by appellant in her opening brief, although the control of the examination of witnesses is within the discretion of the trial court, an abuse of such discretion will justify a reversal.

Appellant's cross-examination of this witness was curtailed by the sustaining of several objections to questions as ''asked and answered'' and ''assuming facts not in evidence,'' which, in our opinion should have been overruled; but, since her medical witnesses had also testified that her disturbed emotional state and the pains of which she complained could not be entirely explained as the effects of the collision, it would be unrealistic to expect testimony from Dr. Goren contrary to their testimony and his own above outlined. We find no abuse of discretion and no prejudice to the appellant by such rulings.

Appellant further contends that the judgment should be reversed because appellant's reexamination of her sister was restricted. The witness testified that plaintiff ''would complain *periodically*'' that her back bothered her before this accident and that such complaints were at a *''particular period* of the month.'' She was asked to ''Explain what that complaint was that she made to you.'' Objection was sustained. She was then asked ''Did your sister at any time indicate to you any explanation of her physical condition?'' Objection to each of these questions was properly sustained.

The judgment is affirmed.

Doran, J., and Fourt, J., concurred.