[Civ. No. 5485. Fourth Dist. Aug. 21, 1957.]

MARIA DA SILVA, as Administratrix, etc., Appellant, v. J. M. MARTINAC SHIPBUILDING CORPORATION (a Corporation) et al., Respondents.

Edward K. Madruga, Harry Ellman and Ellman, Madruga & Marinos for Appellant.

Donnelley, MacNulty & Butler for Respondents.

MUSSELL, J.—This action is brought by Maria da Silva, administratrix of the estate of her deceased son, Manuel, for the benefit of his heirs and to recover damages for his wrongful death. Plaintiff appeals from the verdict of a jury in her favor in the sum of $4,000, claiming that the trial court committed prejudicial error in admitting into evidence tax returns of the decedent's parents; that the judgment is wholly inadequate as a matter of law and the verdict is not supported by the evidence; that the verdict of the jury was arrived at by resort to the determination of chance and should therefore be set aside.

There is no dispute as to the facts. Manuel da Silva at the time of his death on January 25, 1955, was 19 years of age and had he lived, he would have reached his 21st birthday one year and 17 months from said date. He was a member of the crew and employed as a fisherman on the Royal Pacific, a tuna fishing vessel, when it left on a fishing voyage in October, 1954. On January 25, 1955, while the vessel was off the coast of Mexico, Manuel was engaged in sanding a speed boat which was on said vessel and was using, in the performance of his work, an electric one-quarter inch drill with a sander attached. This equipment was furnished by the owners and operators of the vessel. While Manuel was sanding the speed boat, a short occurred in the drill, causing an electric current to pass through his body, resulting in his death by electrocution.

The record shows that the tax returns of the parents

of the decedent for the years 1949, 1950, 1954 were admitted in evidence, over objection by counsel for plaintiff. However, the tax return of the parents for the year 1955 was admitted in evidence, without objection by plaintiff's counsel, and he so stated to the court. This return showed an adjusted gross return of $12,326.55 for the year. The return of 1949 showed an income of $13,128.71, the 1950 return an income of $14,766.93, and the 1954 return an income of $12,029.11. The court stated that these returns were admitted as tending to show the income of the parents on "that date." The returns for 1949, 1950, 1954 and 1955 showed that the income of decedent's parents was substantially the same during each of those years and we find no prejudicial error in the criticized ruling of the court since evidence was received without objection as to what property the parents of the decedent owned, whether or not it was encumbered, and as to the income of decedent's father from his fishing operations.

Appellant next contends that the judgment is wholly inadequate as a matter of law and the verdict is not supported by the evidence. In *Hunton* v. *California Portland Cement Co.*, 64 Cal.App.2d 876 [149 P.2d 471], plaintiff brought an action for damages for the death of his 17-year-old son. The boy had assisted his father as "a general utility man" and although he received no salary, he was given irregular amounts whenever he needed money. The trial court placed a value of $200 per month on his services and stated that his employment was of a value of $100 per month to his parents. On the first appeal in that case the jury returned a verdict for $6,500 in favor of plaintiff. On a retrial, the verdict of $40,000 was reduced to $18,000, and on appeal from that judgment, was reduced to $10,000. ■ The court held:

"It is well settled that in such a case the recovery must be limited to the financial loss occasioned by the death of the minor. This has usually been held to include the value of services during minority, above any living expense furnished, and some allowance for the pecuniary loss, if any, 'of the comfort, society and protection of a deceased child.' In proper cases there has also been included some allowance for contributions during the old age of the parents, where the evidence shows that such could have been reasonably expected. . . ."

The court further stated that the allowance of $3,000 to $4,000 for the services of the deceased during the remainder of his minority would have been liberal.

In the instant case the decedent had earned $900 during one year on a fishing boat before he graduated from high school and had given this money to his mother, who bought his clothes and gave him what he needed. He had made two trips on the Royal Pacific prior to January 5, 1955, and his earnings on these two trips amounted to the sum of $4,437.52. Decedent's brother testified that the Royal Pacific made two fishing trips between July, 1955, and August, 1956, and that a man working on the vessel during that period would have received $16,080, at $10 per ton, which was the amount paid crew members on a share basis.

The insufficiency of the evidence to justify the verdict herein was one of the grounds urged on motion for new trial and was passed upon and denied by the trial court. ■ The question of damages is primarily a question for the jury and the trial court. (*Wilson* v. *City & County of San Francisco*, 106 Cal.App.2d 440, 443 [235 P.2d 81].) ■ In 15 California Jurisprudence 2d, Damages, section 233, it is said:

"An appellate court, when reviewing the propriety of the trial court's ruling on a motion for new trial, can set aside a verdict for inadequacy only if the damages awarded to the plaintiff are so grossly inadequate as to leave no reasonable doubt that they resulted from passion or prejudice on the part of the jury, or if they are contrary to the evidence and constitute a clear abuse of the jury's discretion with respect to the verdict rendered by it. The evidence will be considered so as to sustain, if possible, the verdict of the jury and in order to justify a reversal of the judgment on the ground that the damages are insufficient, the evidence, when considered as a whole, must clearly show that the jury could not have fairly returned the verdict in question." (See also *Mendoza* v. *Rudolf*, 140 Cal.App.2d 633, 636 [295 P.2d 445].)

■ We cannot here hold as a matter of law, under the facts as shown by the record and the rules announced herein, that the jury could not have fairly returned the verdict in question or that passion, prejudice or corruption in arriving at the verdict was shown.

■ Appellant in her third and final argument claims that the verdict of the jury was determined by chance and should therefore be set aside. On motion for new trial herein, appellant submitted three affidavits, two of which were by members of the jury who stated that after the members of the jury had determined that the plaintiff had a right to recover, the amount to which the plaintiff was entitled was determined

by agreement; that it was agreed that each juror would place on a separate piece of paper the amount he felt plaintiff should be awarded; that the amount set forth on the 12 slips of paper would then be totaled and the total divided by 12; and that the amount resulting should be taken as the average sense (sic) of the jurors and placed in the verdict; that said plan was agreed to and carried out by the jurors and the award to the plaintiff was determined accordingly. However, on November 13, 1956, while motion for new trial was pending, defendants filed a petition for leave to question the jurors in open court. This petition was supported by the affidavit of Anna Daniel, another member of the jury, who stated therein that it was not a fact that the various suggested figures for a verdict were totaled and then divided by 12 in order to arrive at the figure of $4,000; that she was of the opinion that $2,000 would be a proper verdict but when others suggested a higher figure, she felt she should increase her amount so that a verdict could be reached, and that after discussing the amount of $4,000, they all agreed on that figure. Another affidavit was filed in connection with the motion by Katherine Burnett, who was also a member of the jury. She stated in her affidavit that after the jury determined that the defendants were liable, the discussion then turned on the question of the amount of the verdict; that some of the jurors, including affiant, wished to award plaintiff $5,000; that others had different amounts, the lowest of which was $2,500; that after discussion on this subject, affiant and others reduced their figures to $4,000 and those who wished to give less agreed to raise their figure to $4,000, and this was the amount of the verdict; that the amount of the verdict was not ascertained by totaling the amounts submitted by the various jurors and dividing that amount by 12. These affidavits presented a conflict in the evidence which was passed upon by the trial court and its determination thereof by denial of motion for new trial is binding upon us.

Judgment affirmed.

Barnard, P. J., concurred.

A petition for a rehearing was denied September 17, 1957, and appellant's petition for a hearing by the Supreme Court was denied October 16, 1957. Carter, J., was of the opinion that the petition should be granted.