[Civ. No. 24154. Second Dist., Div. One. June 23, 1960.]

RALPH NAFUS, Appellant, v. FREIGHT CONSTRUC-
TION, GENERAL DRIVERS, WHOLESALERS AND
HELPERS UNION LOCAL 287 et al., Respondents.

Morris Lavine and Edgar A. Freeman for Appellant.

Parker, Stanbury, Reese & McGee, John H. Peckham, Robert C. Packard and Henry E. Kappler for Respondents.

FOURT, J.—This is an appeal by the plaintiff from a judgment in his favor in a personal injury action.

The plaintiff brought an action against the named defendants for personal injury arising out of an accident which occurred on June 3, 1957. Weinstein, one of the defendants, was driving an automobile southerly on Highway 101 near the Chittenden Pass Road in Monterey County. The plaintiff was riding as a passenger in the front seat of the car with Weinstein. Coakley was driving a car which belonged to the named labor union and he was in the course and scope of his employment at the time of the accident. No question is raised as to the liability of the defendants and therefore it is unnecessary to recite in any detail the facts of the accident itself.

In a jury trial in May, 1959, a verdict was returned in favor of the plaintiff and against all of the defendants in the sum of $2,516. Plaintiff moved for a new trial upon the grounds of (1) insufficiency of the evidence; and (2) that the judgment was against the law. The motion for a new trial was denied. The appeal is from the order denying the motion for a new trial and the judgment.

No appeal lies from the order denying the motion for a new trial and such appeal is dismissed. (*Singleton* v. *Perry,* 45 Cal.2d 489, 500 [289 P.2d 794]; *Mayo* v. *Beber,* 177 Cal. App.2d 544 [2 Cal.Rptr. 405].)

Appellant asserts in effect that the amount of the verdict was inadequate as a matter of law and that defense counsel were guilty of improper conduct in their closing arguments.

A résumé of some of the evidence with reference to plaintiff's injuries and losses is as follows:

The plaintiff claimed that at the time the car in which he was riding went into the ditch and came to a sudden stop, that he was thereby made unconscious. A truck driver who stopped at the scene immediately after the accident occurred testified that the plaintiff was not unconscious at the scene and further that plaintiff talked with an officer of the highway patrol at that time. The plaintiff was taken to a hospital in

Hollister, California, where some X-ray pictures were made and several stitches were taken in lacerations on the plaintiff's head. He stayed overnight at that hospital and the next day drove to Los Angeles with Weinstein in the same car which they had occupied at the time of the accident. When plaintiff arrived in Southern California he went to his home in San Dimas. Dr. Schield, a medical doctor, was called to the plaintiff's home on June 4, 1957. Plaintiff stayed in bed at his home for about six days after which he was removed to a hospital in Pomona in order that the doctor could better observe him and so that the plaintiff could be quiet and secure some rest. While at the hospital the plaintiff walked in the hallways, had bathroom privileges and was generally ambulatory. The sutures were removed at the hospital. More X-rays were taken which revealed three fractured ribs. The doctor did not prescribe any particular treatment other than rest for the cracked ribs. There was no displacement or malalignment of the fractures. The doctor estimated that the plaintiff's disability would extend to July 1, 1957. Plaintiff was discharged from the hospital on June 27, 1957. He stated that he spent July and August in bed, that in September he improved a little and that in October he was out three or four times. The plaintiff further stated that he last saw Dr. Schield in the latter part of September, 1957. Dr. Schield testified that he last saw the plaintiff on July 18, 1957 at his office and that at such time the plaintiff complained of pain in the chest, headaches, aching legs and inability to sleep. The doctor on that occasion prescribed some pills for sedation. He also testified that on the last day he saw plaintiff he found no necessity for seeing the plaintiff again, no future appointment was made and the plaintiff never returned.

The scalp wound of plaintiff healed satisfactorily, his reflexes were normal and, but for the rib fractures and the scalp lacerations, there were no objective findings of any injury. No history was given to Dr. Schield or to the hospital in Pomona of any unconsciousness of the plaintiff at any time and there was no evidence of any muscle spasm. From July 18 or 19, 1957 until January 22, 1959 the plaintiff received no medical care or attention. Within two weeks from the time plaintiff's attorney was notified of a pretrial conference hearing which was to be held on February 27, 1959, the then attorney for the plaintiff, J. Friedman, sent the plaintiff to Dr. Rosenthal who was a long time friend of the attorney.

Dr. Rosenthal in turn referred the plaintiff to a board

certified neurologist, Dr. Milton Heifetz for consultation. Dr. Heifetz was never called as a witness. Dr. Rosenthal secured a history from the plaintiff on January 22, 1959, of unconsciousness of about one or two hours at the time of the accident. An electroencephalogram was performed by Dr. Bercel because of the history given by the plaintiff. The report of Dr. Bercel was negative. The diagnosis of Dr. Rosenthal was based upon the statement of plaintiff (and assumed to be a fact) that he was unconscious following the accident.

A stipulation was made that the plaintiff incurred medical and hospital bills in the reasonable sum of $830.23.

As to plaintiff's claimed loss of profits, no statement of profit and loss as such was ever produced. The plaintiff engaged an accountant at all times and such accountant was never produced. The income tax records of 1956 and 1957 were not produced, although the court had ordered and directed the plaintiff to bring such records to court. In effect the plaintiff apparently tried to prove loss of profits by showing a change in his net worth. The plaintiff from time to time had various stores and he shifted the inventory from one store to another. The jury could have believed from the testimony that he was in the business of running "closing out" and "quitting business" sales.

The plaintiff had no journal, no purchase journal, no trial balances, no working sheet balances. His answer to questions with reference to the items last mentioned was, "No books, I can't have. I am book." There were no figures presented to the jury which indicated that plaintiff made a profit out of the business either before or after the accident.

 It was appropriately stated in *Kraut* v. *Cornell*, 175 Cal.App.2d 528 (November, 1959), at pages 531-532, [346 P.2d 438]:

"Plaintiff's position is that 'the damages awarded are inadequate as a matter of law.' The guiding principle in the instant matter is aptly stated in *Gersick* v. *Shilling*, 97 Cal.App. 2d 641 [218 P.2d 583]. On page 645, the court said: 'The question as to the amount of damages is a question of fact. In the first instance, it is for the jury to fix the amount of damages, and secondly, for the trial judge, on a motion for a new trial, to pass on the question of adequacy. Whether the contention is that the damages fixed by the jury are too high or too low, the determination of that question rests largely in the discretion of the trial judge. The appellate court has not seen or heard the witnesses, and has no power

to pass upon their credibility.' In accord are *Harris* v. *Los Angeles Transit Lines*, 111 Cal.App.2d 593, 597 [245 P.2d 35]; *Sills* v. *Soto*, 124 Cal.App.2d 539, 544 [269 P.2d 98]; *Adams* v. *Pacific Motor Trucking Co.*, 172 Cal.App.2d 505, 507 [342 P.2d 351]. ■■■ It is, of course, the responsibility of the trier of fact to evaluate the credibility of the witnesses and the weight to be given their testimony. (*Huth* v. *Katz*, 30 Cal.2d 605, 609 [184 P.2d 521].) ■■■ In this connection it should also be pointed out that the trier of fact may reject the uncontradicted testimony of a witness provided *he does not act arbitrarily.* (Emphasis added.) (*Hicks* v. *Reis*, 21 Cal. 2d 654, 659-660 [134 P.2d 788].) Relevant in this respect are many considerations: interest of the witness in the result of the case, his motive, the manner in which he testifies, and the contradictions appearing in the evidence. (*Huth* v. *Katz*, supra; *American Trust Co.* v. *Fitzmaurice*, 131 Cal.App.2d 382, 388 [280 P.2d 545]; *Hill* v. *Thomas*, 135 Cal.App.2d 672, 681 [288 P.2d 157].) ■■■ Also, '[i]n determining whether an amount awarded is inadequate as a matter of law, the evidence on the issue of damages must be considered in the light most favorable to sustaining the determination reached by the trier of facts.' (*Harris* v. *Los Angeles Transit Lines*, supra.) ''

■■■ Appellant's next contention is that defense counsel made improper statements in argument to the jury. Friedman, plaintiff's counsel, in his opening argument to the jury referred to some of the plaintiff's testimony, '' 'I knew when I walked in the store, I saw exactly what my merchandise was, what it was worth.' A man who ran the business himself and kept all the books himself.'' Friedman then said, ''There were times that this man may not have made himself understood to you, or to me for that matter, either, because this man has difficulty in expressing himself. I think that it is proper to say that as I watched him I saw the wheels turning around in his head.''

Mr. Peckham of counsel for the Union, in his closing argument, said with reference to his questions to the plaintiff that such were made in good faith. A reading of the record would seem to bear out such a statement.

Mr. Peckham apparently turned this latter phrase into a matter of ridicule and undoubtedly created an unpleasant atmosphere for the plaintiff. However, nothing was said in this instance, which we can classify as misconduct, and no request was made that the judge direct the jury to disregard

the complained of remarks. The appellant consequently waived any alleged error of any challenged statement. (See *Olsen* v. *Standard Oil Co.*, 188 Cal. 20, 26 [204 P. 393]; *North* v. *Vinton*, 17 Cal.App.2d 214 [61 P.2d 950].)

Counsel for plaintiff disregarded any mention of respondent counsel's remarks in presenting reasons to the trial judge for a new trial.

The matter does not appear of serious concern to us.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 17, 1960.