[Civ. No. 20429. First Dist., Div. Two. May 17, 1963.]

SHELDON HOROWITZ, Plaintiff and Appellant, v. ROBERT M. FITCH, Defendant and Respondent.

Allan L. Sapiro and Bergen Van Brunt for Plaintiff and Appellant.

Bledsoe, Smith, Cathcart, Johnson & Phelps and Robert A. Seligson for Defendant and Respondent.

AGEE, J.—Plaintiff appeals from a judgment of $1,000, entered upon a jury verdict in his favor in an action for damages for personal injuries and loss of use of his automobile. The action arose out of an intersection collision between the automobiles of the parties. Liability was admitted by defendant at the commencement of the trial. The main issue on appeal is the adequacy of the award.

To put the matter bluntly, the question before the jury for its determination was whether it believed appellant's account of his *subjective* complaints of pain and suffering. It is apparent that the question was resolved adversely to him.

The trial judge denied appellant's motion for a new trial. His ruling on such a factual issue is entitled to great weight by an appellate court.

Appellant's briefs on appeal ignore the well established rule that an appellate court should view the evidence in the light most favorable to the respondent and he has shown no reason why we should not follow such rule in this case.

 The accident happened on Thursday, July 24, 1958, shortly before midnight. Appellant was taken to an emergency hospital. He stayed there for approximately two hours until his wife and a neighbor picked him up and took him home. The record does not indicate any medical treatment at the hospital.

On Saturday, July 26, 1958, appellant went to the office of a Dr. Zuleger and was examined. The doctor testified that he made the following diagnosis: "I had an impression that Mr. Horowitz suffered a sprain of the neck, or as one commonly calls it, a whiplash injury of the neck." The doctor stated that appellant was totally disabled for "several weeks" and thereafter had a "recurrent disability." He explained the basis of this latter statement as follows: "He tried to go back to work and then on several occasions he called me up and said that he had to quit because of another headache."

On cross-examination, Dr. Zuleger admitted that there were no objective neurological signs of injury and that this was confirmed by a neurologist (Dr. Palmer) to whom Dr. Zuleger referred the appellant. Dr. Palmer's examination was made on Tuesday, August 12, 1958, less than three weeks after the accident. Dr. Zuleger admitted that Dr. Palmer had reported to him that appellant was then "capable of full employment." While Dr. Palmer's opinion was hearsay, there was no objection made to its admission.

The next time Dr. Zuleger saw appellant, after the initial office visit of July 26, 1958, was on August 14, 1958. It was apparently during this two and one-half week period that Dr. Zuleger felt that appellant was "totally disabled" and that it was after that that he had "a recurrent disability."

There is an interesting sidelight on the period immediately following the accident. Appellant testified that the duties of his employment required that he drive a car and that he was forced to rent one while his was being repaired. A claim for loss of use was supported by rental invoices showing use of a rented car by appellant from Monday, July 28, 1958, at 10:35 a.m., to Friday, August 1, 1958, at 10:35 a.m., and from Fri-

day, August 1, 1958, at 11:07 p.m., to Friday, August 8, 1958, at 3:13 p.m. The invoice for the first period shows 349 miles driven and the invoice for the second period shows 558 miles driven. The invoices were charged to appellant's employer and, presumably, appellant was using the rented car for business purposes. Thus, the invoices indicate that appellant drove a rented car on every business day, except the day after the accident, for a period of two weeks following the accident and averaged approximately 90 miles per day. This would hardly indicate that appellant was "totally disabled" during this period, as Dr. Zuleger was led to believe. Nor is it consistent with appellant's testimony that "I spent the major portion of the next ten days in bed."

The only other medical witness was Dr. Hartwig, an orthopedist who examined appellant on April 14, 1959, at the request of respondent's counsel. The record well supports his qualifications. He testified that appellant's principal complaints were of unlocalized headaches and pain and discomfort in his neck on the left side. The doctor did not find any objective signs of disability or injury or any evidence of neurological or nerve involvement. There was no evidence of any sensory change or motor nerve change. There was no evidence of any lack of mobility of the neck. X-rays were negative and there were no muscle spasms.

In short, according to Dr. Hartwig, appellant's complaints of pain and disability were dependent entirely upon what appellant said they were. They could not be demonstrated or related to anything which the doctor could find objectively. We therefore have a question of appellant's credibility, which the jury obviously determined adversely to him.

Appellant claims that he lost $1,200 in earnings as the result of the accident. He was employed as the manager of the San Francisco branch office of a company headed by a Mr. Webster. In August 1958, Webster moved to San Francisco and took over actual charge of the office. It does not appear that this move was in any way connected with appellant's accident. Appellant retained the title of branch manager until the first of the year 1959. However, it was during 1958 that appellant claims the loss occurred. His counsel made the following statement in open court, during the trial: "We are not making any claim for any loss in '59." Appellant testified that he was making approximately $800 a month at the time of the accident and that his earnings after the acci-

dent were approximately $600 a month for "approximately five to six months."

On cross-examination, the record shows the following: "Q. All right. And wasn't your salary or commission reduced? A. Not at that time, not when he [Webster] first arrived. Q. Well, but within a short time thereafter? A. I believe, yes, within a short time. Q. As a matter of fact, when he came here after — within a short time, to put it bluntly, he felt he was somewhat dissatisfied with the way the outfit was being run and your were relieved of some of the duties that you formerly accomplished, right? A. Yes, sir; yes, sir. . . . Q. And then after he came here you were put out as a sales manager without any salesmen under you, right? A. That's correct. Q. That is when your income went down, when you were put out at $600 a month, is that correct? A. That's correct, sir; yes, sir. Q. Then after awhile you got a salesman to work under you, then you went back up, your gross, and so on, was about $800, right? A. Mainly my own efforts rather than the salesman."

It is reasonable to conclude that the claimed loss of earnings was not caused as the result of any injuries sustained by appellant in the accident. The jury evidently did so and we cannot say its conclusion is without support in the record.

 Appellant produced an itemized bill for medical services totaling $213.50. He testified that it was for services rendered to him as a result of the accident involved herein. It appears on the bill that the last service rendered by Dr. Zuleger was on December 29, 1958. The doctor testified that he left thereafter for Blue Lake, Humboldt County, and did not again see appellant professionally. The total of his bill up to this point was $122.50. The bill then indicates that further medical services were rendered by another member of the same medical group, a Dr. Selig. These services were rendered from March 17, 1959, to May 19, 1959, and the charges therefor totaled $91.

Dr. Zuleger's bill contains charges of $15 for "minor surgery" on September 28, 1958, $10 for treatment of "[l]aceration of the left hand" on October 5, 1958, and $25 for treatment on December 13, 1958, of injuries received in an auto accident occurring near Novato. Dr. Zuleger testified that there were also other items unrelated to the accident involved herein, such as a sore throat and services to the appellant's family. It would be reasonable to conclude that the total of

the charges of Dr. Zuleger which are attributable to this accident does not exceed $50 or $60.

On April 23, 1959, appellant was in another automobile accident. The charges of Dr. Selig, commencing on that date, were made part of a claim by appellant for damages resulting from that accident. This claim was handled by appellant's counsel herein and a settlement was obtained. Dr. Selig's other charges, which were made for the period of March 17, 1959, to April 18, 1959, inclusive, total $35. The bill shows that $15 of this amount was for a "dressing or cast" applied on March 18, 1959. It is doubtful that the other charges are attributable to the subject action.

So that, in summary, the jury reasonably could have concluded that the total of appellant's special damages resulting from the accident involved herein, including rental of automobile ($218.83), drugs and physical therapy, did not exceed $400. Certainly, it cannot be said, as a matter of law, that the award of $1,000 was inadequate.

The rule applicable to such issue is well settled. In *Kraut* v. *Cornell* (1959) 175 Cal.App.2d 528, 531 [346 P.2d 438], it is stated: "Plaintiff's position is that 'the damages awarded are inadequate as a matter of law.' ▮ The guiding principle in the instant matter is aptly stated in *Gersick* v. *Shilling* [1950] 97 Cal.App.2d 641 [218 P.2d 583]. On page 645, the court said: 'The question as to the amount of damages is a question of fact. In the first instance, it is for the jury to fix the amount of damages, and secondly, for the trial judge, on a motion for a new trial, to pass on the question of adequacy. Whether the contention is that the damages fixed by the jury are too high or too low, the determination of that question rests largely in the discretion of the trial judge. The appellate court has not seen or heard the witnesses, and has no power to pass upon their credibility.' " (See also *Seffert* v. *Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 506-507 [15 Cal.Rptr. 161, 364 P.2d 337]; *Wood* v. *Alves Service Transportation, Inc.* (1961) 191 Cal.App.2d 723, 733 [13 Cal. Rptr. 114]; *Blye* v. *Affonso* (1960) 185 Cal.App.2d 241, 243 [8 Cal.Rptr. 155]; *Nafus* v. *Freight Construction etc. Union* (1960) 182 Cal.App.2d 120, 123-124 [5 Cal.Rptr. 924].)

▮ And it is pointed out in *Frampton* v. *Stoloff* (1956) 142 Cal.App.2d 175, 176 [298 P.2d 10], that: " [a]n appellate court is authorized to disturb a judgment on the ground of inadequacy of damages only where the amount of the award is supported by no substantial evidence in the record and the

verdict is a clear abuse of the jury's discretion." (See also *da Silva* v. *J. M. Martinac etc. Corp.* (1957) 153 Cal.App.2d 397, 399-400 [314 P.2d 598]; 15 Cal.Jur.2d 46, Damages, § 233.)

In *Roedder* v. *Rowley* (1946) 28 Cal.2d 820, 823 [172 P.2d 353], the Supreme Court said: "[T]he determination of the amount of damages . . . will not be disturbed by an appellate court unless it is so grossly disproportionate to any reasonable limit of compensation as shown by the evidence that it shocks one's sense of justice and raises a presumption that it is based on passion and prejudice rather than sober judgment."

■ Appellant calls attention to the giving of four "stock" instructions which he contends were "confusing and misleading." One of these instructions is that "[t]he Court has not expressed . . . an opinion . . . that any alleged fact in the case is or is not proved." The other three instructions complained of contain the phrase, "if you find that the plaintiff is entitled to a verdict," or words of similar import. The argument of appellant is that the jury was thereby confused and misled "with respect to whether the jury first must find whether plaintiff was entitled to a verdict before damages could be awarded."

If there was any confusion, appellant contributed to it by requesting the giving of BAJI 104-E (rev.), 174 and 174-L, all of which contain the foregoing "if" phrase. Appellant explains this by saying that he had offered his proposed instructions before respondent admitted liability. This admission was made on the first day of trial, which was Wednesday, May 25, 1960, immediately following the impanelment of the jury. The instructions were given to the jury on the final day of the trial, Tuesday, May 31, 1960. The record does not show, nor does appellant claim, that he ever withdrew his request that the court give the three BAJI instructions specified above. He had plenty of time to do so, and thus call the court's attention to the very error of which he now complains.

Moreover, it is inconceivable that the jury could have been confused or misled. It was specifically told that the defendant had admitted legal liability, that as a matter of law the defendant negligently caused the accident, that the plaintiff was not contributorily negligent and that "the only issue that is being submitted to you is one that requires you to determine the injuries so suffered by the plaintiff and the amount of damages he is to recover therefor."

The jury was given only one form of verdict and told that "there is a place for the foreman or forelady to sign this verdict when you have agreed upon the amount to be inserted therein."

We cannot see how the jury could have been misled into thinking that liability was an issue before them.

▮ Appellant next complains of the giving of the following instruction, which was proposed by respondent: "You may not in this action award the plaintiff damages for any pain, suffering, disability, lost time or any other loss or damage *proximately* caused by an accident *other than* the accident of July 25, 1958." (Italics ours.)

Appellant says that this instruction "might well have been interpreted by the jury to mean that the plaintiff was not entitled to recover from the first tort feasor, the defendant, for any pains or headaches or other continuations or aggravations of the original injury the plaintiff may have suffered after the time of the second accident." We do not agree with this contention.

At appellant's request, the jury was also instructed as follows: "If you find that the defendant herein caused an injury to the plaintiff, he is liable not only for such injury but also for any aggravation or additional injury due to a later accident *which was proximately caused by the original injury.*" (Italics ours.)

These instructions correctly express the rule that a negligent defendant is liable for all compensable damages *proximately* caused by his negligent act. Both are correct statements of the law and neither is inconsistent with the other.

At *appellant's request,* the jury was also instructed as follows: "You are instructed that the Plaintiff has a right to make a claim and settlement for a latter [*sic*] accident when it caused a flaring up or aggravation of the injuries claimed in the present lawsuit."

This instruction relates to the admitted fact that appellant made a claim against the woman involved in the accident of April 23, 1959, and that a settlement of this claim was made with her insurance company. Appellant can hardly complain of the giving of this instruction requested by him.

Appellant's contention is further refuted by the instruction, given at his request, that "[t]he amount of damages you determine should be awarded to plaintiff must not be reduced by any payment or compensation received by plaintiff from a source independent of the defendant."

■ The next contention relates to the medical file on appellant which apparently was kept at the offices of the medical group, of which Dr. Zuleger was a member until January 1959. He testified that the entry therein, dated December 27, 1958, was the last one made by him. The last entry in the file is dated March 14, 1960, but it is not indicated by whom it was made.

The first mention of the file was made during Dr. Zuleger's cross-examination. He was asked if he had made any notes concerning his treatment of appellant and he answered that he had; that he had looked at these notes just before testifying and that they were in a file that appellant's counsel had. Respondent's counsel then asked appellant's counsel if he might see the file and the latter handed it over to him without protest or objection. This file was later marked as exhibit D for identification.

Dr. Zuleger was then questioned, without objection, about certain matters in the file. No request was made at any time while he was on the witness stand that the file, or any portion thereof, be admitted in evidence. No attempt was ever made to qualify it as a business record entitled to be admitted in evidence. (Code Civ. Proc., § 1953f.)

Dr. Hartwig was also questioned by both sides about some of the matters in the file. He had been called out of order, before appellant had rested his case in chief.

No objection was made at any time to the use of the file in the manner above described and any error in such procedure must be deemed to have been waived. (See cases collected in Witkin, California Evidence, p. 732; also, *People* v. *Horn* (1960) 187 Cal.App.2d 68, 77 [9 Cal.Rptr. 578].)

After Dr. Hartwig had concluded his testimony, appellant offered the entire file in evidence. Respondent's objection that no proper foundation had been laid was sustained.

■ Appellant states his position as follows: "In the case herein, the entire medical record of the plaintiff was material and relevant to his case. . . . Such entire record comes within the scope of Section 1854 of the Code of Civil Procedure that 'the whole on the same subject' may be inquired into.''

Appellant gives too wide a scope to section 1854. That section has never been construed to authorize the reception of other portions of a writing which are not explanatory of or relevant to that which was brought out by the opposing party and which are intrinsically inadmissible. (*Crosby* v. *Martinez*, 159 Cal.App.2d 534, 539 [324 P.2d 26].) Crosby in-

volves a conversation, but the principle is equally applicable to a writing.

In the instant case, appellant made no effort to show what other portions of the file were relevant to those which were referred to in the questioning of Dr. Zuleger and Dr. Hartwig. ▮ As stated in *People* v. *Webb*, 143 Cal.App.2d 402, 418 [300 P.2d 130]: "[I]t was the duty of appellant . . . to separate the relevant from the irrelevant, and to make his offer of proof accordingly. This he did not do. It was not error therefore to refuse to permit the entire transcript to be introduced."

After the respondent's objection to the introduction of the file was sustained, appellant made the following offer of proof: "Well, may I for the record make an offer showing that I am offering *it* for the purpose— . . . —of showing the complete testimony, complete letters, parts of which have been testified to . . . I want to offer *it* for that purpose." (Italics ours.) Obviously "it" refers to the entire file which appellant's counsel had just referred to as "defendant's for identification." It is the only exhibit which could be so described.

Thus, appellant made no effort to separate the relevant from the irrelevant, the admissible from the inadmissible. (*People* v. *Webb, supra.*)

▮ Appellant also misconstrues the effect of section 2047 of the Code of Civil Procedure. That section allows a witness to refresh his recollection from notes made by him at or immediately after the fact occurred. However, this does not give the right to the party calling such a witness to introduce the notes in evidence. That right is given to the adverse party "if he choose[s]" to do so.

▮ Appellant argues, however, that respondent made Dr. Zuleger his own witness so far as the notes are concerned and that he, appellant, thereby became the "adverse party" within the meaning of section 2047. We disagree. Dr. Zuleger testified that he refreshed his recollection by looking at his notes *just before* he testified on direct examination. Appellant's counsel thereupon, without protest or objection, produced the file which contained the notes. The situation thus presented fits exactly into the provision of section 2047 that "in such case the writing must be produced, and may be seen by the adverse party, who may, *if he choose,* cross-examine the witness upon it, and may read it to the jury." (Italics ours.)

▮ Appellant's last assignment of error is that respond-

ent's counsel was guilty of misconduct in referring to the subsequent accident of April 23, 1959. Appellant testified that this accident also caused him pain in the neck and headaches. However, he attributes part of this to the accident involved herein. Appellant admits that questions relating "solely to the injuries received in the [two] subsequent accidents . . . would not have been objectionable." But, he states, questions "as to his filing a claim, having a lawsuit pending, and settlements" were improper.

We think such questions were proper cross-examination. Appellant had already testified that both subsequent accidents brought on headaches. It was proper to inquire as to whether he had claimed to be "hale and hearty" just prior to the happening of these two accidents or whether he had admitted that he was still suffering from the injuries received in the instant action.

No assignment of misconduct was ever made by appellant nor did he ever request the court to instruct the jury to disregard the allegedly prejudicial questions. He may not now on appeal assign them as misconduct. (*State Rubbish etc. Assn.* v. *Siliznoff*, 38 Cal.2d 330, 340 [240 P.2d 282]; *Edrington* v. *Stong*, 194 Cal.App.2d 218, 223 [15 Cal. Rptr. 34]; *Harrison* v. *Harter*, 129 Cal.App. 22, 32 [18 P.2d 436].)

Judgment affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.