[Civ. No. 19033. Second Dist., Div. Two. June 13, 1952.]

ISABEL L. HARRIS, Appellant, v. LOS ANGELES TRANSIT LINES (a Corporation), Respondent.

594

Paul C. Hill for Appellant.

Melvin L. R. Harris, Trippet, Newcomer, Yoakum & Thomas and Henry F. Walker for Respondent.

FOX, J.—Plaintiff was awarded $10,503.77 in an action to recover damages for personal injuries. She claims the award is inadequate.

The evidence shows that plaintiff was a passenger on a streetcar operated by defendant on September 13, 1948, at a time when the car, while stopped at a street intersection, was struck from the rear by another streetcar operated by defendant. The force of the impact threw plaintiff forward against the seat in front of her, while passengers in the seat behind her were thrust forward against the back of plaintiff's seat causing it to press against plaintiff's back and neck. Plaintiff testified that immediately following the interval during which she was wedged between the seats, she experienced sharp pain in her back. Thereafter she filled out an ''accident'' card given her by the motorman. She reached home without assistance, but on the day following her back pains intensified and she suffered from a painful soreness of the neck muscles. She thereupon telephoned defendant corporation and asked that a doctor be sent, but since one was not immediately available, she consulted her personal physician, Dr. Wallach, who prescribed sedatives and rest. On September 27, 1948, X rays were taken which revealed that plaintiff had a congenital defect of the fifth lumbar vertebra known as spondylolisthesis, manifested by a slipping forward of the fifth lumbar vertebra upon the sacrum. This condition antedated the time of the accident. The X ray also revealed a degree of preexisting narrowing and degeneration of the intervertebral discs and a moderate sclerosis of the cervical spine. The X rays of that region showed a reversal of the usual anterior curvature in the middle cervical spine, which Dr. Wallach testified might have been attributed to an injury. It was his opinion that the pains and soreness of which plaintiff complained were the result of the accident and that the trauma caused by the accident aggravated the preexisting condition of plaintiff's spine.

During the two months following the collision Dr. Wallach administered to plaintiff several times but her condition failed to respond to treatments. Thereupon he consulted with Dr. Scott, an orthopedist, and it was decided that a surgical stretching operation, involving manipulation

of the back under general anesthesia, should be undertaken. This operation was performed on November 18, 1948, but plaintiff's pain continued in the upper and lower lumbar areas, with generalized pain in the neck, shoulders, arms and knees and severe headaches.

To remedy this condition, on June 9, 1949, Dr. Scott performed a spinal operation, which necessitated the grafting of a bone into the area of the congenital spinal defect to accomplish the fusion of the fifth lumbar vertebra to the sacrum. The operation was pronounced a success. Dr. Scott indicated that it should have relieved the symptoms originating with plaintiff's spondylolisthesis which the injury on the streetcar had exacerbated. Plaintiff was discharged from the hospital on June 20, 1949, and remained at home confined to her bed for about eight weeks. Thereafter her convalescence was of an ambulant nature. She required the care of a practical nurse and housekeeper from June 20, 1949, to May, 1950, to whom the sum of $981 was paid for her services. Plaintiff remained out of work from the time of her injury until the date of the trial asserting she was physically incapable of pursuing her former occupation. On September 3, 1949, Dr. Scott visited the patient but she made no complaint with reference to her back at that time.

The testimony disclosed that at the time of the accident plaintiff was about 48 years old and the mother of two children. During the seven or eight months prior to the accident she had been regularly employed as a seamstress at a wage of $1.70 per hour and had earnings of $68 per week. Prior to her injury she was an active person and frequently attended dances. Her medical history indicates that in 1932 or 1933 plaintiff had an operation in which her Fallopian tubes were removed. In December of 1946 she suffered from backaches, headache and irritation upon passage of urine and in an examination by Dr. Wallach a large pendunculated fibroid tumor was discovered and subsequently removed. Dr. Wallach also performed a subtotal hysterectomy, removing the entire uterus and the right ovary and freeing the pelvic area of adhesions.

Dr. Wallach testified that following plaintiff's discharge from the hospital on June 20, 1949, he examined her at various times until January 15, 1951. She continued to complain of the pains previously described, and on April 6, 1950, she complained of hot flushes which Dr. Wallach associated with the onset of a surgical menopause which had commenced from the time of the hysterectomy and ovarian operation

of December, 1946. During these latter visits Dr. Wallach treated her primarily for her emotional and nervous symptoms and other symptoms of menopause, and he attributed a part of her mental state to the accident. The testimony of several doctors called by defendant suggested a lack of objective basis for plaintiff's complaints from the latter part of 1949 to the time of the trial other than that which would be characteristic of the menopause. A chronaxy test on plaintiff showed no nerve injury. One of the doctors testified to a "large element of exaggeration of her symptoms."

On this state of the evidence the court found that due to injuries caused by defendant's negligence, plaintiff had been unable to pursue her occupation for the period from September 13, 1948, to October 3, 1949, and had thus been deprived of earnings amounting to $3,740. The court also made an award of $4,000 for pain and suffering, and $2,763.72 for professional, hospital and housekeeping services, and entered judgment for $10,503.72 together with costs. Plaintiff contends that this award, as a matter of law, was inadequate.

██ The issue as to what amount of damages will adequately compensate plaintiff for loss of earnings, pain and suffering and the cost of medical and hospital care and other expenses incurred by reason of the injury is primarily a question of fact, and an award of damages may not be set aside unless it is so obviously unreasonable as to raise a presumption of passion, prejudice or corruption by the trier of facts, or the uncontradicted evidence demonstrates that the award is insufficient as a matter of law. (*Gersick* v. *Shilling*, 97 Cal.App.2d 641, 645 [218 P.2d 583]; *Quirk* v. *City & County of San Francisco*, 105 Cal.App.2d 85, 87 [232 P.2d 893].) ██ In determining whether an amount awarded is inadequate as a matter of law, the evidence on the issue of damages must be considered in the light most favorable to sustaining the determination reached by the trier of the facts. (*Gersick* v. *Shilling*, *ibid.*)

With these principles in mind, we turn to a more specific consideration of plaintiff's contentions. Plaintiff urges that the court erred in the amount of the award for medical services by arbitrarily disregarding the testimony of witnesses as to the need for such services and the reasonableness of the charges. The court reduced the amount of the claim for Dr. Wallach's services from $560 to $335, decreased Dr. Scott's bill from $1,850 to $1,065, and eliminated the $1,415 charged

for services by Dr. Billig in 1951. ▮ In personal injury actions, plaintiff may recover only for the necessary and reasonable expenditures attributable to the injury. ▮ It was a question of fact for the court to determine how much of the medical expenses were necessitated by the accident. ▮ While the amount charged for medical treatment is some evidence of its reasonable value (*Dewhirst* v. *Leopold,* 194 Cal. 424, 433 [229 P. 30]), the court is not required to allow the full amount charged even though the doctor testifies that in his opinion such amount is reasonable and necessary. (*Gersick* v. *Shilling, supra,* p. 648.) We find no abuse of discretion in the award made, since the court was free, in the face of conflicting evidence, to make its own reasonable inferences as to how much of the medical treatment was referable to defendant's fault. The same principle applies to the allowance made by the court for hospital expenses and the services of a housekeeper.

▮ Plaintiff asserts that the court erred in limiting plaintiff's damages for loss of earnings to a period from the date of the accident to about three months after the spinal fusion operation. She claims that she has been disabled right up to the time of the trial and argues that her incapacity to work was proximately caused by her injuries. The extent of plaintiff's disablement, its originating causes, and the degree to which defendant's negligence was responsible for producing it were the subject of dispute between the parties. There is much diversity of opinion on the matter in the medical testimony. While it is conceded that plaintiff was not free from physical discomfort at the time of the trial, the evidence supports the inference that some of her difficulty derives from the onset of menopause and its associated emotional stresses. It was a question of fact for the trial court to determine to what extent the impairment of plaintiff's earning ability is traced to defendant's negligence. (*Tornell* v. *Munson,* 80 Cal.App.2d 123, 125 [181 P.2d 112].)

Plaintiff strongly urges that the court erroneously refused to consider her continuing pain and disability and that the award of $4,000 for ''pain, suffering, inconvenience and mental distress'' was wholly inadequate. She claims that the court restricted its award by limiting its consideration to injuries of which there was objective evidence and by refusing to consider plaintiff's subjective feelings of pain and mental suffering. The record does not sustain this contention. The measurement of human pain and suffering and its translation into a monetary award sufficient to compensate an in-

jured person for the trauma inflicted upon him is difficult of achievement. Although it would be improper to determine such an award by a mere consideration of the external indicia of injury, since traumatic injuries may produce deepseated effects not susceptible of being gauged by the most sensitive of medical apparatus (*Coleman* v. *Galvin,* 66 Cal. App.2d 303 [152 P.2d 39]), yet there is often much subjective coloration and distortion in a litigant's version of his injuries. Upon the good faith, experience and sound discretion of the trier of the facts must rest the delicate task of separating fact from fancy and divesting the kernel of truthful description from the shell of exaggeration in determining the actual extent of plaintiff's injury and suffering. ▮ In all such cases where no fixed standard of compensation is possible, the determination made must be sustained if it is compatible with human experience and the exercise of sound discretion. (*Sassano* v. *Roullard,* 27 Cal.App.2d 372, 375 [81 P.2d 213].) ▮ Where there is conflict in the evidence as to the cause or extent of plaintiff's maladies, it is for the trial court to decide how much of the pain and suffering stemmed from the accident. (See *Lee* v. *Nanny,* 38 Cal.App.2d 90 [100 P.2d 832].) In the instant case, the trial court observed plaintiff's demeanor, listened to extensive medical testimony, saw X rays taken after the accident, and made its appraisal of defendant's liability. ▮ While there is room for disagreement in matters of this nature, it cannot be said as a matter of law that the award was inadequate. (*Johnson* v. *McRee,* 66 Cal. App.2d 524 [152 P.2d 526]; *Gersick* v. *Shilling,* 97 Cal.App. 2d 641 [218 P.2d 583].) When viewing the evidence in the light most favorable to supporting the judgment, it is patent the court was not convinced plaintiff had sustained her burden of proving that the ills she described were all caused by defendant's negligence. (*Signorelli* v. *Miller,* 55 Cal.App. 2d 538 [130 P.2d 730].)

▮ The basic difficulty with plaintiff's argument is that she would have this court reweigh the evidence, and draw inferences contrary to those drawn by the trial court. Under firmly established principles we are not at liberty to do this. (*Johnson* v. *McRee, supra,* p. 529.)

The purported appeal from the order denying the motion for a new trial is dismissed. (*Carlin* v. *Prickett,* 81 Cal. App.2d 688, 690 [184 P.2d 945].) The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.