118 Cal.Rptr.2d 215 (2002)
97 Cal.App.4th 38
Paul E. McMEANS et al., Plaintiffs and Appellants,
v.
SCRIPPS HEALTH, INC., Defendant and Respondent.
No. D035486.
Court of Appeal, Fourth District, Division One.
March 26, 2002.
Rehearing Granted April 22, 2002.
*218 Blumenthal, Ostroff & Markham, Sheldon A. Ostroff, David R. Markham, San Diego, and Michael D. Marchesini for Plaintiffs and Appellants.
Friestad & Giles and Deborah Giles, San Diego, for Defendant and Respondent.
Masnatt, Phelps & Phillips, Barry S. Landsberg and Harvey L. Rochman, Los Angeles, for Catholic Healthcare West as Amicus Curiae on behalf of Defendant and Respondent.
Rehearing Granted April 22, 2002. See 123 Cal.Rptr.2d 143.
O'ROURKE, J.
Paul E. McMeans, Joseph P. Denny, and Mary Ann Shaul, as class representatives (Class members), appeal from an order granting summary judgment in favor of Scripps Health, Inc. (Scripps) and Medical Liability Recoveries, Inc. (MLR).[1] The Class members are patients who were treated at a Scripps hospital for injuries caused by third parties and who sued those third parties. The Class members were insured by providers who had entered into contracts with Scripps that specified fixed charges agreed to in advance for covered services. Class members and/or their insurance providers paid Scripps in full for the care provided to Class members. MLR then placed liens in favor of Scripps on the judgments or settlements Class members received from the third parties or their insurance providers under California's Hospital Lien Act (HLA), Civil Code[2] sections 3045.1 through 3045.6. In each case, the liens were based upon charges that were greater than the amounts Scripps had agreed to accept from the insurance providers.
Class members contend the court erred in granting summary judgment because Scripps placed section 3045.1 liens on Class members' recovery when Class members owed no debts to Scripps. Class members also contend the court should have granted their motion for summary adjudication of Scripps's affirmative defense that it was privileged to assert the liens under section 47, subdivision (b)(2) and of their cause of action for declaratory relief. We reverse the order granting *219 summary judgment in favor of Scripps. We affirm the court's denial of Class members' motion for summary adjudication of Scripps affirmative defense of the section 47, subdivision (b)(2) privilege. We affirm in part and reverse in part the court's denial of Class members' motion for summary adjudication of the cause of action for declaratory relief.

FACTUAL AND PROCEDURAL HISTORY
In November 1996, McMeans was injured in an automobile accident caused by an uninsured third party and was treated at Scripps Mercy Hospital. As a result of his accident, McMeans suffered pain in his ribs that interrupted his sleep and prevented him from sitting, standing, driving and bending. Because he could not work for a period, he sustained lost income of $6,250. McMeans settled with Farmers Insurance for $35,500, the uninsured motorist limits of the insurance policy that covered the car in which McMeans was a passenger.
At that time of his treatment, McMeans was insured under a preferred provider insurance plan issued by Aetna Life Insurance Company (Aetna) and Scripps Mercy Hospital was a participating provider under the Aetna plan. Although Aetna paid Scripps the contract rate for McMeans's treatment and Farmers Insurance paid McMeans's share of the contract rate, MLR asserted a lien on behalf of Scripps in the amount of $4,298.86 against McMeans's settlement.
On June 5, 1998, Shaul was injured in an automobile accident and underwent surgery at Scripps Memorial Hospital, consisting of open reduction internal fixation of her medial malleolus and right talus, and bone grafting of her right talus. As a result, she was totally disabled for about six months and lost income of about $60,000. She continues to have chronic right leg and ankle pain, which may require additional medical treatment. Further, Shaul has incurred out-of-pocket expenses of about $5,000 for therapy, orthotic devices, and chiropractic treatment.
In June 1998, Shaul was insured under Sharp Health Plan, a managed care plan. Sharp Health Plan paid Scripps the contracted rate for Shaul's treatment and Shaul paid a $100 copayment. Shaul settled with Farmer's Insurance for $100,000, the insurance policy limits of the tortfeasor responsible for her injuries. MLR filed a lien on behalf of Scripps in the amount of $6,168.17 "upon any damages which a claim of action has been brought or will be brought."
On April 17, 1996, Denny was injured in an automobile accident and sustained multiple head, neck, shoulder and knee injuries. He later had neck surgery at Scripps Memorial Hospital, which consisted of an anterior cervical discectomy and fusion. Denny was disabled for several months, resulting in lost wages in excess of $4,000. As a result of his injuries, Denny continues to suffer limited movement in his neck and chronic pain. He can no longer participate in activities he used to enjoy, such as hiking, bicycling, and physical education with his students. Denny received $100,000 in settlement.
At the time of surgery, Denny was insured under the CaliforniaCare HMO plan of Blue Cross of California and Scripps Memorial was a participating provider under that plan. Blue Cross paid Scripps the contract rate for its services and Denny paid any applicable copayments or deductibles. Nine days after Denny's settlement, MLR filed a lien on behalf of Scripps for $13,790.38 on Denny's recovery from the tortfeasor.
*220 This class action was filed on July 1, 1998. The operative complaint is the third amended complaint, which was filed on October 18, 1999, and contains causes of action for unfair business practices, violation of the consumer legal remedies act, trespass to chattels, breach of contract, negligence, accounting, unjust enrichment, declaratory relief, mandatory injunction and prohibitory injunction.
On April 21, 1999, the trial court certified the lawsuit as a class action "to include as class plaintiffs all persons who: [1] were injured in accidents and thereafter treated at hospitals operated by ScrippsHealth (`Scripps'); [2] were insured under individual or group medical insurance plans, including but not limited to Health Maintenance Organization plans, Preferred Provider Organization plans and/or Managed Care plans; [3] whose medical insurers have contracted with Scripps in which Scripps agreed to provide covered services for the insurer's policyholders/beneficiaries at negotiated discounted rates; or alternatively, pursuant to the Knox-Keene Health Care Service Plan Act of 1975, the payments received by Scripps based on pre-determined rates from the patient's insurer (plus any applicable co-pay or deductible) constitute full payment; [4] whose bills at such negotiated discounted rates or pre-determined rates have been paid; and [5] against whom Scripps within the last four years either directly, or through the action of Medical Liability Recoveries, Inc. or any other agent of Scripps, has asserted a lien under Civil Code section 3045.1 demanding payment of the difference between the negotiated discounted rate or pre-determined rate and Scripps' ordinary full charge for the covered service."
On May 21, the court denied Scripps's motion for judgment on the pleadings, which asserted that each cause of action was barred by the litigation privilege. (§ 47, subd. (b)(2).) On September 2, the court denied a renewed motion for judgment on the pleadings.
The parties then agreed to file cross-motions for summary adjudication and summary judgment. Class members filed a motion for summary adjudication of Scripps's thirteenth affirmative defense, the privilege conferred under section 47, subdivision (b)(2), and the eighth cause of action for declaratory relief. Scripps filed a motion for summary judgment. On February 23, 2000, the court granted Scripps's motion for summary judgment and denied Class members' motion for summaiy adjudication.

DISCUSSION

I. Summary Judgment

Summary judgment is granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc, § 437c, subd. c.) We review de novo the trial court's decision to grant summary judgment and are not bound by the trial court's stated reasons or rationales. (Hersant v. Department of Social Services (1997) 57 Cal.App.4th 997, 1001, 67 Cal.Rptr.2d 483.) Further, we review issues of statutory interpretation de novo. (Heavenly Valley v. El Dorado County Bd. of Equalization (2000) 84 Cal. App.4th 1323, 1334, 101 Cal.Rptr.2d 591.)

A. Hospital Lien Act (HLA)
Section 3045.1 provides: "Every person, partnership, association, corporation, public entity, or other institution or body maintaining a hospital licensed under the laws of this state which furnishes emergency and ongoing medical or other services to any person injured by reason of an accident or negligent or other wrongful *221 act ..., shall, if the person has a claim against another for damages on account of his or her injuries, have a lien upon the damages recovered, or to be recovered, by the person ... to the extent of the amount of the reasonable and necessary charges of the hospital ..., in which services are provided for the treatment, care, and maintenance of the person in the hospital or health facility affiliated with the hospital resulting from that accident or negligent or other wrongful act." Section 3045.1 creates a "statutory nonpossessory lien ... in favor of a hospital against third persons liable for the patient's injuries." (Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies (1997) 15 Cal.4th 213, 217, 61 Cal.Rptr.2d 638, 932 P.2d 210 (Mercy).) The lien "compensates a hospital for providing medical services to an injured person by giving the hospital a direct right to a certain percentage of specific property, i.e., a judgment, compromise, or settlement, otherwise accruing to that person." (Ibid., italics added.)
Scripps contends section 3045.1 creates a direct obligation between the tortfeasor and the hospital in the amount of the hospital's reasonable charges and the amount of its lien is not based upon the injured patient's debt to the hospital. Scripps bases its contention upon section 3045.3, which requires the hospital to give notice of its lien only to the tortfeasor and the tortfeasor's insurer; section 3045.4, which requires the tortfeasor to pay the hospital directly; and section 3045.5, which gives the hospital a cause of action to enforce its lien against the tortfeasor, not against the injured patient. These provisions define who shall pay the hospital, but do not define from whose property the payment is made.
Class members contend they and/or their insurance providers had paid Scripps in full for its services and, by placing a lien on their recoveries, Scripps seeks amounts greater than the amounts Scripps agreed to accept from the providers. In addressing issues raised by Class members, we initially note, notwithstanding the class certification, the contracts between Class members and their insurance providers and between Scripps and the insurance providers differ substantially. As we will discuss below, Scripps wrongfully placed a lien on the recovery of two of the class representatives but rightfully placed a lien on the recovery of the third class representative.
The issues raised in this appeal were recently addressed in Nishihama v. City & County of San Francisco (2001) 93 Cal. App.4th 298, 306-309, 112 Cal.Rptr.2d 861 (Nishihama). We find the reasoning of Nishihama compelling and elect to follow it.
"Even if the HLA contemplated an independent right in the hospital, the extent of that right would be defined by any contract between the injured party or her insurer and the health care provider. Civil Code section 3045.4 accordingly provides that the third party `shall be liable to the [health care provider] for the amount of its lien claimed in the notice which the hospital was entitled to receive as payment for the medical care and services rendered to the injured person.' (Italics added.) The amount that a hospital is entitled to receive as payment necessarily turns on any agreement it has with the injured person or the injured person's insurer." (Nishihama, supra, 93 Cal.App.4th at pp. 307-308,112 Cal.Rptr.2d 861.)
The patient's debt to the hospital is the foundation for the hospital's right to a lien. (Nishihama, supra, 93 Cal.App.4th at p. 308, 112 Cal.Rptr.2d 861.) The "reasonable and necessary charges," then, are the charges made to the patient or the *222 patient's insurance provider. The HLA does not give hospitals a cause of action against tortfeasors; it allows hospitals to place a lien on the patient's cause of action. The amount of the lien is the "reasonable and necessary charges" for the patient's treatment. (§ 3045.1.) If these charges have been paid, the hospital has no amount, reasonable or otherwise, it may seek from a third-party tortfeasor.
Although Scripps contends it seeks payment from tortfeasors, there is no question such payments ultimately come from the Class members. Under California law, the most a personal injury plaintiff can recover for medical services is the amount that has been paid or incurred for those services, even if that amount is less than the market rate. (Hanif v. Housing Authority (1988) 200 Cal.App.3d 635, 641, 246 Cal.Rptr. 192.)
In the cases involved in Class members' class action, those amounts are based upon Class members' medical insurance contracts and the contracts those insurance providers negotiated with Scripps. If Scripps's liens exceed these amounts, then Scripps collects more from the Class members' judgments or settlements than the Class members are legally entitled to recover for medical expenses. In effect, Scripps collects the portion of Class members' judgments attributable to lost wages or pain and suffering. Accordingly, we conclude Scripps's "lien rights do not extend beyond the amount it agreed to receive from [Class members' insurance providers] as payment in full for services provided to [Class members]." (Nishihama, supra, 93 Cal.App.4th at p. 307, 112 Cal.Rptr.2d 861.)
We also reject Scripps's contention that the legislative history of section 3040, enacted in September 2000, gives it a right to place a section 3045.1 lien for its usual and customary charges. Section 3040 limits the lien rights of medical providers to the amount they actually paid for the health care, but specifically exempts hospitals pursuing section 3045.1 liens. (§ 3040, subd. (g)(3).) The Consumer Attorneys of California argued to the Legislature that section 3040 should apply to hospital liens and provided the Legislature with a copy of Satsky v. United States of America (S.D.Texas 1998) 993 F.Supp. 1027, 1029 (holding that a hospital could not place a lien on a patient's recovery under a Texas statute similar to section 3045.1 because the statute "was clearly not intended to overeompensate hospitals that accept patients who do have the ability to pay, nor to provide a windfall for hospitals who feel aggrieved by the circumscription of hospital charges by insurance plans").
The fact that section 3040 expressly places no limit on a hospital's lien rights says nothing about whether those lien rights were already limited under the HLA. Further, subsequent legislation is, at best, an unreliable gauge of legislative intent. (United States v. Price (1960) 361 U.S. 304, 313, 80 S.Ct. 326, 4 L.Ed.2d 334 [recognizing that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one"].) For similar reasons, we do not place much weight on the existence of other statutory liens that purportedly exist in the absence of an underlying debt. The unique nature of a hospital lien under the HLA makes such comparisons questionable.

B. Insurance Contracts

We look at Class members' medical insurance contracts and the contracts Scripps entered into with those providers in order to determine whether the liens are lawful. When we review the contracts of the three class representatives, we find Scripps was not entitled to place a lien on *223 the recoveries of McMeans or Shaul, but was entitled to place a lien on Denny's recovery.

1. McMeans

The Aetna insurance plan that covered McMeans provides that if a third party is liable for a patient's injury, Aetna shall be subrogated to the patient's recovery to the extent of the benefits Aetna paid. McMeans was treated at Scripps Mercy Hospital. The contract between Scripps Mercy Hospital and Aetna provides in part: "In no event ... shall any Member be liable to Hospital for any sums owed to Hospital by the applicable Payor. In addition, neither Hospital nor its agents, trustees, or assignees shall maintain any action at law against a Member to collect sums owed by the applicable Payor; provided, however, that Hospital may collect from Members co-payments, coinsurance or deductibles for Covered Services, or amounts due for non-Covered Services. Amounts for non-Covered Services may be charged at Hospital's usual and customary charges." This agreement provides that Scripps may not collect payment from patients insured by Aetna, other than repayments or deductibles, unless the service provided to the patient is not covered under the insurance agreement. This agreement allows Scripps to bill at its usual and customary rate for services not covered in the patient's insurance agreement. Scripps does not contend McMeans's treatment was for noncovered services. Therefore, in McMeans's case, Scripps was not entitled to place a lien on McMeans's recovery based upon its reasonable and necessary charges.
Scripps contends, however, that it may collect its reasonable and necessary fees from a third party tortfeasor, under the "Coordination of Benefits" (COB) section of its agreement with Aetna, which states the following: "Hospital shall be entitled to all COB recoveries relating to Covered Hospital Services. Hospital shall make a reasonable effort to seek reimbursement for Covered Hospital Services under other third party coverages when applicable.... For per diem or discount off charges payments, in the event that Payor is the secondary carrier under the coordination of benefits rules, Payor shall be required to pay Hospital the difference between Hospital's full customary charges and the amount collected by Hospital from third party payors, but in no event to exceed the amount the Payor is required to pay if it were the primary carrier."
We are not persuaded by this contention. Coordination of benefits is a term used when there is duplicate health care coverage. [Kaiser Foundation Health Plan, Inc. v. Lifeguard, Inc. (1993) 18 Cal.App.4th 1753, 1757, 23 Cal.Rptr.2d 235.) The term "coverage" is normally used to refer to insurance coverage. For instance, Insurance Code section 10270.98 states in part: "Group disability policies may provide, among other things, that the benefits payable thereunder are subject to reduction if the individual insured has any other coverage (other than individual policies or contracts) providing hospital, surgical or medical benefits, whether on an indemnity basis or a provision of service basis, resulting in such insured being eligible for more than 100 percent of the covered expenses." (Italics added.) The reference to "coverage" is clearly a reference to other insurance coverage. A tort obligor does not provide insurance coverage. Additionally, although the contract does not expressly define the term "third party payor," it clearly contemplates an institutional payer, such as another insurance company or Medicare. (See Palumbo v. Myers (1983) 149 Cal.App.3d 1020, 1030-1034, 197 Cal.Rptr. 214 [a settling third *224 party tortfeasor is not a "third party payer" as the term is used in Welfare and Institutions Code section 14019.4].) Therefore, this contract provision does not change our analysis.

2. Shaul

Shaul was enrolled in the Sharp Choice plan. Scripps's contract with Sharp provided in part: "Hospital shall obtain Authorization for a Member and shall not bill or not allow Plan Providers or any other providers to bill, or attempt to collect from a member for services rendered, except for Copayments and noncovered services." Like Aetna's agreement with Scripps, this agreement provides that Scripps may not collect payment from patients insured by Aetna, other than copayments or deductibles, unless the service provided to the patient is not covered under the insurance agreement.
Shaul's contract with Sharp provides in part: "If you or your Dependent are injured in an accident caused by a negligent or intentional act or omission of another person, the Plan will advance Covered Benefits subject to an automatic lien by agreement to reimburse the Plan for any recoveries or reimbursement you receive from the person who caused the injury." Although this contract allows Sharp to place a lien and uses the word "advance," it does not specifically exclude benefits. Therefore, as in McMeans's case, Scripps was not entitled to place a lien on Shaul's recovery based upon its reasonable and necessary charges.

3. Denny

Unlike the prior contracts, Denny's CaliforniaCare contract with Blue Cross does not provide benefits for medical care of injuries caused by third parties. Under the heading "Reimbursement for Acts of Third Parties," the CaliforniaCare disclosure form states in part: "No benefits will be provided under this plan for medical care for, or received in connection with, any illness, injury, or condition for which a third party may be liable or legally responsible by reasons of negligence, an intentional act or breach of any legal obligation. But benefits will be provided under this plan subject to the following: [¶] 1. CaliforniaCare and your medical group will automatically have a lien to the extent of benefits provided, upon any recovery, whether by settlement, judgment or otherwise, that you receive from the third party, the third party's insurer, or the third party's guarantor. The lien will be for the reasonable cash value of the benefits provided by your medical group or by us under this plan for the treatment of the illness disease, injury or condition for which the third party is liable...." (Original italics omitted; italics added.)
The Ninth Circuit interpreted a similar provision in another Blue Cross contract[3] and held the following: "The contract excludes Blue Cross from liability for injuries tortiously caused by third parties, and provides an exception for benefits which will be advanced in anticipation of possible future recovery. Once recovery has been made, the conditions of the exception no longer exist and the exclusion remains." *225 (Quails v. Blue Cross of California, supra, 22 F.3d at p. 845, original italics.) That is, under the CaliforniaCare plan, Blue Cross does not provide benefits for medical care for injuries caused by a third party tortfeasor. It merely advances money.
Because Denny was injured by a third party tortfeasor, his medical services were not covered under the CaliforniaCare plan. Blue Cross merely advanced payment to Scripps on Denny's behalf. Therefore, the contract between Scripps and Blue Cross does not govern the amount Scripps may charge for the medical services it provided to Denny. Instead, under the California-Care plan, Scripps may place a lien for the "reasonable cash value of the benefits" it provided.
Although Scripps has shown it has a contractual right to place a lien on Denny's recovery, Scripps has not met its burden of proof that the lien is for "reasonable and necessary charges." (§ 3045.1.) The reasonable value and necessity of Scripps's services are questions of fact. Although the amount paid or incurred for hospital services is some evidence as to its value, we also require evidence of the value and necessity of the professional services of the physicians and the hospital. (Guerra v. Balestrieri (1954) 127 Cal.App.2d 511, 520, 274 P.2d 443; Harris v. Los Angeles Transit Lines (1952) 111 Cal.App.2d 593, 598, 245 P.2d 35 (Harris ).) Typically, a physician testifies as to these issues. (See Harris, supra, 111 Cal.App.2d at p. 598, 245 P.2d 35.) Scripps produced a declaration by Clelia Ki Ki Barbeau, president and CEO of MLS. She declared, "The lien asserted ... is the difference between the payment from the insurer and the actual reasonable and customary charges incurred by the patient." (Italics added.) Class members objected to this evidence under Evidence Code section 702. The court did not rule as to the objection. Under Biljac Associates v. First Interstate Bank (1990) 218 Cal.App.3d 1410, 1420, 267 Cal.Rptr. 819, we "presume[ ] on appeal that a judge has not relied on irrelevant or incompetent evidence." Accordingly, we presume the court sustained the objection as to Barbeau's use of the word "reasonable." Barbeau had no personal knowledge of the reasonable value of the medical services Scripps provided to Denny. Further, Scripps introduced no evidence that its services were necessary. Accordingly, Scripps has produced no admissible evidence that the amount of the lien on Denny's recovery was reasonable. Therefore, summary adjudication of the amount of Denny's debt to Scripps is inappropriate.
Because Scripps was not entitled to place a lien on McMeans's or Shaul's recoveries and because there is a triable issue of fact as to the reasonable value of the services Scripps provided to Denny, the court erred by granting summary judgment.

II. Section 4-7, Subdivision (b)(2)
Class members contend the court erred by denying their motion for summary adjudication of Scripps's thirteenth affirmative defense, the privilege conferred by section 47, subdivision (b)(2). Class members contend this privilege does not apply because Scripps's actions were not communicative and were not connected to litigation. We disagree.
The privilege conferred by section 47, subdivision (b)(2), bars all tort causes of action, other than malicious prosecution, based upon conduct protected by the privilege. (Silberg v. Anderson (1990) 50 Cal.3d 205, 215-216, 266 Cal.Rptr. 638, 786 P.2d 365.) The principal purpose of the privilege is to afford litigants and witnesses freedom of access to the courts without fear of being subsequently harassed *226 by derivative tort actions. (Id. at p. 213, 266 Cal.Rptr. 638, 786 P.2d 365.) "[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action." (Id. at 212, 266 Cal.Rptr. 638, 786 P.2d 365.) "Further, it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." (Ibid.)
We reject Class members' contention that the filing of liens in favor of Scripps was not connected with any litigation. "If the publication has a reasonable relation to the action and is permitted by law, the absolute privilege attaches." (Albertson v. Raboff (1956) 46 Cal.2d 375, 381, 295 P.2d 405.) A federal court held that a lien for the treatment of a Medi Cal patient filed under Welfare and Institutions Code section 14124.791 was sufficiently related to the claims in the Medi Cal patient's personal injury action to support intervention as of right. (Ghazarian v. Wheeler (C.D.Cal.1997) 177 F.R.D. 482, 486-87.) The court relied upon two cases that allow intervention by the holder of a protectable statutory lien interest because, in part, "this interest relates to a cognizable legal interest in any monetary proceeds resulting from a settlement or judgment in the action." (Id. at p. 487, relying upon Diaz v. Southern Drilling Corp (5th Cir.1970) 427 F.2d 1118, 1124 [tax lien] & McDonald v. E.J. Lavino Co., (5th Cir.1970) 430 F.2d 1065, 1071 [insurance provider's lien under workers compensation law].) Similarly, a hospital filing a section 3045.1 lien has an interest to be adjudicated in an injured person's personal injury lawsuit because if the injured person does not prove the third party's liability, the hospital's lien loses all value. The publication of the notice of lien is reasonably related to the personal injury action because it informs the tortfeasor and/or the tortfeasor's insurance provider that the amount of the lien, unless a smaller amount is prescribed by section 3045.4, must be paid directly to the hospital. Therefore, Scripps's liens were filed in connection with the tort actions brought by Class members.
We also reject Class members' contention that Scripps's actions are not protected by the privilege because Scripps engaged in a tortious course of conduct that incidentally included the publication of the lien. Class members claim their injuries are due, not to the imposition of the lien, but to the wrongful collection process. Class members rely upon LiMandri v. Judkins (1997) 52 Cal.App.4th 326, 345, 60 Cal.Rptr.2d 539 (LiMandri), where we held that a privileged communication does not shield a defendant from liability for a wrongful course of conduct that incidentally includes the communication. In Li-Mandri an attorney had a fee agreement granting him a portion of the clients' recovery. (Id. at p. 334, 60 Cal.Rptr.2d 539.) The defendant allegedly interfered with that contractual relationship by arranging a loan to the clients secured by the same recovery and filing a notice of lien in the lawsuit asserting the lender's security interest in the recovery. (Id. at p. 345, 60 Cal.Rptr.2d 539.)
This case is distinguishable from LiMandri. The security interest in LiMandri was created by executing documents; filing the notice of lien was merely incidental to the creation of the security interest. (Id. at pp. 342, 346, 60 Cal.Rptr.2d 539.) In contrast, the HLA requires a hospital to send notice of the HLA lien to the third party and his insurance provider. *227 (§ 3045.3.[4]) Further, the course of tortious conduct in LiMandri included executing the security interest, refusing to concede the superiority of the attorney's lien, and inducing the clients to breach their fee agreement with the attorney. (Id. at p. 345, 60 Cal.Rptr.2d 539.) In contrast, the wrongful conduct Class members have identified is Scripps's overcharging them by noticing liens.[5] The act of overcharging is the same act as the assertion of the lien on Class members' recoveries. Labeling the assertion of a lien as an attempt to overcharge Class members does not change its nature as a communicative act.
The privilege conferred by section 47, subdivision (b)(2), bars Class members' tort causes of action against Scripps. It does not, however, bar those causes of action that do not lie in tort, including the eighth cause of action for declaratory relief.

III. Declaratory Relief

Class members contend the court erred by denying their motion for summary adjudication of the cause of action for declaratory relief. In the motion for summary adjudication of the eighth cause of action, Class members asked the court for a judicial declaration that (1) Scripps's collection practices and the assertion of liens in favor of Scripps is unlawful and (2) Class members are not indebted to Scripps for the amounts asserted in the liens.
A party may bring an action for declaratory relief under Code of Civil Procedure section 1060, which provides in part: "Any person interested under a written instrument, excluding a will or a trust, or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property, ... may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action ... in the superior court ... for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract." A declaratory relief action may be brought on behalf of a class, Serrano v. Priest (1971) 5 Cal.3d 584, 618, 96 Cal.Rptr. 601, 487 P.2d 1241, and may be used to determine the construction of a statute, Lane v. City of Redondo Beach (1975) 49 Cal.App.3d 251, 255, 122 Cal.Rptr. 189, as well as the rights and duties of the parties under a contract.
As discussed above, the liens Scripps placed on the recoveries of McMeans and Shaul were not lawful and those two class representatives owe no debt to Scripps. Therefore, we reverse the court's denial of Class members' motion for summary adjudication of the declaratory relief cause of action as to those two class representatives. On the other hand, Scripps's assertion of a lien on Denny's recovery is lawful because Blue Cross, Denny's insurance provider, does not provide benefits when an insured is injured by a third party tortfeasor. Accordingly, we affirm the court's denial of Class members' motion for summary adjudication of the declaratory relief cause of action as to Denny.

*228 DISPOSITION
In accordance with this court's order of June 11, 2001, staying this appeal as to Medical Liability Recoveries, Inc. under title 11 United States Code section 362, Medical Liability Recoveries, Inc.'s appeal is severed from that of Scripps Health.
The court's grant of summary judgment in favor of Scripps is reversed. The court's denial of Class members' motion for summary adjudication of Scripps's defense of privilege under section 47, subdivision (b)(2) is affirmed. The court's denial of Class members' motion for summary adjudication of their eighth cause of action for declaratory relief is reversed as to class representatives McMeans and Shaul, but affirmed as to class representative Denny. Class members and Scripps to bear their own costs on appeal.
WE CONCUR: BENKE, Acting P.J., and McDONALD, J.
NOTES
[1] MLR is in bankruptcy. Accordingly, the appeal is stayed as to MLR under section 362 of the Bankruptcy Code (11 U.S.C. § 362) and we sever MLR from the appeal.
[2] All further statutory references are to the Civil Code unless otherwise specified.
[3] "Blue Cross relied on Section Seven AA of the policy which excluded coverage for `[a]rry illness, injury or other condition for which a third party may be liable or legally responsible by reason of negligence, an intentional act or breach of any legal obligation on the part of such third party. Nevertheless, Blue Cross will advance the benefits of this Agreement to the Member subject to the following: ... Blue Cross will automatically have a lien, to the extent of benefits advanced, upon any recovery, whether by settlement, judgment or otherwise, that the Member receives from the third party....'" (Quails v. Blue Cross of California (9th Cir.1994) 22 F.3d 839, 842.)
[4] Section 3045.3 provides in part: "A lien shall not be effective, however, unless a written notice ... is delivered ... to each person, firm, or corporation known to the hospital and alleged to be liable to the injured person for the injuries sustained. ..." (Italics added.)
[5] Class members appear to contend Scripps engaged in a tortious course of conduct because Scripps published the liens in bad faith. There is no evidence Scripps published the liens in bad faith. At the time Scripps filed the liens, no California appellate court had decided the issue posed by this appeal, and several trial courts had enforced Scripps's liens.